[In Bank.—November 6, 1883.]

## THE PEOPLE, RESPONDENT, *v.* JOHN C. P. COLLINS, APPELLANT.

CRIMINAL LAW — MURDER — CONSPIRACY — EVIDENCE. — It is not error to admit
in evidence against a defendant charged with murder, the acts and declarations
of a co-conspirator in a design to commit robbery generally, when the killing
for which the defendant is indicted resulted from a robbery committed in pur-
suance of such design.

ID. — When in a trial for murder the prosecution proves that there was taken
from the deceased, at the time of the killing, two bars of bullion, and that the
defendant had been discharged from the State prison but a short time prior
thereto, and that he was impecunious, evidence showing that the defendant was,
shortly after the commission of the crime, in possession and disposed of two bars
of bullion corresponding in amount with those taken from the deceased, is
admissible against the defendant as tending to connect him with the crime.

APPEAL from a judgment of the Superior Court of Nevada
County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*J. M. Walling,* and *A. D. Mason,* for Appellant.

*Attorney-General Marshall, Thos. S. Ford, E. H. Gaylord,
Niles Searls,* and *A. C. Niles,* for Respondent.

Ross, J.—About midday of the 1st of September, 1879, the
Eureka stage, *en route* from Eureka *via* North Bloomfield to
Nevada City, in Nevada County of this State, was stopped
when within three and one half miles of its destination by two

masked highwaymen, who forced the driver and passengers to alight, and thereupon proceeded to rob them. Among the passengers was William F. Cummings, who had with him a valise containing two bars of gold bullion, each about four inches long, two to three inches wide, and from one and one half to two inches in thickness, and each of the value of from three thousand five hundred dollars to four thousand dollars. When the robbers took hold of the valise, Cummings said it contained all his worldly possessions, and that he would defend it; and thereupon a scuffle ensued between him and them, during which one of the robbers fired upon him with a shotgun, killing him almost instantly. They then fled with the bullion of the murdered man. For that murder Collins, whose *alias* is Patterson, and one Thorne, *alias* Dorsey, were jointly indicted on the 26th of October, 1882. They were separately tried. Collins was convicted of murder in the first degree and sentenced to be hung. From the judgment of death and an order refusing him a new trial he prosecutes the present appeal, relying upon certain alleged errors in the ruling of the court below.

It appears that nearly two years after the commission of the murder, Collins and one Roger O'Meara met in the jail at St. Louis in the State of Missouri. Each was incarcerated for a crime alleged to have been committed by him in that State. They had known each other in California, and had been inmates together of the State prison at San Quentin, and, subsequently had been confederates in the commission of other crimes within the State of California. When O'Meara met Collins in the St. Louis jail the conversation between them, according to O'Meara's testimony in the case at bar, turned upon the robbery and murder of the 1st of September, 1879; and in that conversation Collins confessed to him his own participation in them, detailing with great minuteness all the circumstances in relation to them, from the inception of the unlawful and wicked enterprise, in the pursuit of which the robbery and murder were committed, to and including the disposal of the bullion of the victim at New Orleans, Louisiana, and Louisville, Kentucky. According to the confession as testified to by O'Meara, Collins, Thorne, and one Crumm, met by appointment in the spring of 1879, at Stockton, and there arranged for a series of robberies,

commencing their operations in Tuolumne County, and continuing them in Sacramento and Yuba counties. About August, 1879, they met at the house of one Frazee, near Marysville, in Yuba County, where Thorne obtained the gun with which the murder was committed. About that time Crumm withdrew from the agreement, and Collins and Thorne went into Nevada County for the further prosecution of their enterprise, camped in the vicinity of Nevada City, and committed the robbery and murder in question on the 1st day of September.

Crumm was put upon the stand by the prosecution, and testified to the meeting of Collins, Thorne, and himself at Stockton, and to the agreement to rob; the subsequent meeting at Frazee's about August, 1879; his withdrawal from the arrangement, and to declarations by Collins and Thorne that they would go into Nevada County and continue the business of robbing stages, mines, and whatever else they could.

The first point made for the defendant is that this testimony of Crumm was inadmissible. We do not think so. It not only went to corroborate the confession, but it was good as independent testimony of the conspiracy to perpetrate robberies formed by Collins, Thorne, and Crumm in the first place, and its subsequent continuation by Collins and Thorne. The conspiracy, according to the testimony, contemplated the robbing of stages and their passengers whenever and wherever opportunity offered. The law holds each party to it responsible for the acts of each co-conspirator done in pursuance and furtherance of the common design, which extends to the consequences which might reasonably be expected to flow from carrying into effect the unlawful combination. There was, therefore, no error in admitting in evidence against Collins, the acts and declaration of Thorne, in relation to the gun with which the murder was committed. Besides, there was evidence tending to show that within an hour of the commission of the murder, the defendant was seen in company with Thorne, in the immediate vicinity of the place of the murder, with the identical gun in his hand.

On the trial the people offered evidence tending to show that the murderers of Cummings took from him the two bars of gold bullion, and they also introduced proof tending to show that in December, 1879, at New Orleans and Louisville, the defendant

had in his possession and disposed of gold bullion corresponding in amount to those proven to have been taken from the murdered man. It is objected that the bars of bullion possessed and disposed of by defendant in New Orleans and Louisville were not shown to have been the same bars taken from Cummings. It is true there was no direct evidence that this was so, nor was it necessary that there should have been. It had been shown that the defendant was discharged from the State prison at San Quentin but a short time before the commission of the robbery and murder; that he was then impecunious; that the robbery and murder were committed; that two bars of gold bullion were taken by the murderers from the murdered man; that shortly afterwards the defendant was in possession and disposed of gold bars corresponding in amount with that stolen, and that he and Thorne divided the proceeds. We have no difficulty in holding such testimony admissible as tending to connect the defendant with the commission of the crime. We see no error in the instructions nor in the rulings of the court below prejudicial to any substantial right of the defendant.

Judgment and order affirmed.

MORRISON, C. J., MYRICK, J., McKEE, J., THORNTON, J., SHARPSTEIN, J., and McKINSTRY, J., concurred.