[No. 13520.   In Bank. — November 27, 1890.]

## J. F. BARKLY, APPELLANT, *v.* J. S. COPELAND, RESPONDENT.

EVIDENCE— EXAMINATION OF WITNESS—ANSWERING QUESTION TOO QUICKLY — OBJECTION TO EVIDENCE — STRIKING OUT ANSWER — EXCEPTION — WAIVER OF QUESTION. — The court has a right, and it is its duty, to give opposite counsel a chance to object to a question which has been answered too quickly, and to strike out the answer for such purpose; and where a witness answers a question too quickly to give an opportunity for an objection before the answer is given, and the court, upon motion, strikes out the answer, on grounds of objection to the question, and an exception is taken to such ruling, but no further objection is made to the question after such ruling, the question itself remains unchallenged, and the passing of the examining counsel to another question is a waiver of the former question, and his exception to the striking out of the answer is not well taken.

ID. — CROSS-EXAMINATION — IMPEACHMENT OF WITNESS — COLLATERAL AGREEMENT TO SUPPRESS EVIDENCE GIVEN. — A witness may be asked,

on cross-examination, for the purpose of discrediting his testimony, and laying a foundation for impeachment, whether he had not, on a previous occasion, made a collateral agreement with or proposition to another party for a consideration to suppress the very testimony given in the case. Such evidence does not fall within the rule that a witness cannot be impeached by evidence of particular wrongful acts not bearing upon the matter in issue, nor within the rule that a witness cannot be impeached in regard to a purely collateral matter.

Id. — Impeachment on Collateral Matter — Slander — Settlement of Theft — Declarations of Third Party. — It is not permissible to impeach a witness by contradicting his statement in regard to a purely collateral matter brought out on cross-examination; and in an action for slander, committed in charging that plaintiff participated in a theft, where the convicted thief, on cross-examination by the plaintiff's counsel, testified that he was told by a third person while under arrest that the whole matter of the stealing had been settled, and that plaintiff's name was mentioned in the conversation, such third person cannot be called for the plaintiff to contradict the statement thus brought out.

Id. — Slander — Participation in Theft — Books of Plaintiff — Bona Fide Purchase of Stolen Property. — Upon the trial of an action for slander in charging plaintiff with being interested in the larceny of certain cattle, entries of the plaintiff in his books, showing that he had put down therein the cattle he was charged to have stolen, as having been purchased by him, are not admissible in evidence in his favor, as a litigant is not permitted to strengthen his case by his own declarations, whether written or verbal.

Id. — Action against Thief for Purchase-money — Res Gestæ. — In such action, where the plaintiff testified that he paid a certain amount to the owner of the cattle stolen, evidence of a suit to recover such amount, brought against the thief after the cattle were stolen and the thief was arrested, is inadmissible, as the transaction was no part of the *res gestæ*.

Id. — Proof of Conspiracy — Declarations of Co-conspirator. — After proof of a conspiracy, the declarations of one conspirator, accompanying an act done in furtherance of the common design, is competent evidence against his confederate. But the conspiracy itself cannot be proved as to either of the alleged co-conspirators by evidence of the declarations of the other.

Id. — Impeachment of Moral Character — Particular Wrongful Acts — Cross-examination. — A witness cannot be impeached by evidence of specific wrongful acts, for the purpose of showing that the witness is destitute of moral qualities; nor can the witness be questioned on cross-examination as to such acts.

Appeal from a judgment of the Superior Court of Tehama County, and from an order denying a new trial.

The facts are stated in the opinion.

*Jackson Hatch, Clay W. Taylor,* and *A. M. McCoy,* for Appellant.

*Chipman & Garter, John F. Ellison,* and *L. V. Hitchcock,* for Respondent.

FOOTE, C. — This action was brought to recover damages for slanderous words spoken by defendant, in (as it is alleged) falsely charging the plaintiff, Barkly, with being interested with Russell Speegle in the larceny of certain cattle, the property of one Thomas Polk, and with receiving the same, knowing them to have been stolen by Speegle. The defense set up was justification on the ground that the language spoken was true, and certain facts in mitigation were also pleaded. The jury found for the defendant, and from the judgment thereupon rendered, and an order refusing a new trial, this appeal is taken.

The first ground of error relied upon by the appellant is, that the court erred in striking out, upon the defendant's motion, the answer of the witness Laura Mandeville, in response to the question put by the plaintiff's counsel, with reference to whether or not she had made a certain statement to one Sam Nelson, at a time when Nelson mentioned to her that the defendant was watching her front door, etc., and in refusing to allow to be answered the plaintiff's question to the same witness relating to a conversation with Nelson. The question asked was: " Now, at the time before Nelson and Mandeville had a row, did n't Sam Nelson come into your house one night, during the time of the former trial of this case, — your house, that you rented at and in the town of Red Bluff, — and then and there say to you that he had seen Copeland standing out watching the front door of your house, or words in substance and to that effect, and ask you what Copeland was doing there? Did n't you then respond to him, and tell him that Copeland was hanging around you, shadowing you, and trying to get you to

swear to something for him in this case, and that you
were not going to do it?" The answer stricken out was:
"He said nothing of the kind to me, and I said nothing
to'him." The objection was made on the ground that
"it is not the proper way to impeach a witness. There
is nothing in that question contradictory to what the
witness stated upon the stand." The question was
answered before the objection was made; and, upon the
statement that the defendant's counsel had endeavored
to state the objection before answer, and was unable to
anticipate it, the court, upon motion, struck it out, and
the plaintiff excepted. There is nothing in the excep-
tion. The court had a right, and it was its duty, to give
the opposite side a chance to object to the question,
which had been answered too quickly, and to strike out
the answer for such purpose. After the answer was
stricken out, no objection to the question was made.
The question therefore stood unchallenged, and while it
was in this condition plaintiff's counsel passed to an-
other question, and thereby waived the former.

This question was then asked: "After the row took
place between Mandeville and Nelson, which you have
just referred to, did n't you go to Nelson, in the town of
Red Bluff, during the former trial of this case, and say
to him, if he would not prosecute Mandeville for shoot-
ing him, that you would not testify for Copeland in this
case, or words in substance, and to that effect?" Objec-
tion was made, and sustained, that the question was as
to matter irrelevant and immaterial and that it was
not proper cross-examination. To this exception was
duly made. All this was upon the cross-examination of
the witness, who took the stand for the defendant. If
the matter attempted to be brought out was intended to
show the defendant in the light of one attempting to
corrupt the witness, and cause her to swear falsely, and
that it would bind him, counsel for the plaintiff freely
concede that the ruling of the court is correct; but the

contention is, that plaintiff's purpose was to impeach the witness, as showing her unworthy of belief from her statements, as being willing to suppress testimony for a consideration, which went to her general integrity.

Upon the other hand, the defendant contends that while it is competent to impeach a witness by showing that at other times he or she had made statements inconsistent with his or her testimony as given upon the trial, yet that there is a limitation of the rule, and that the matter involved in the supposed contradiction must not of itself be merely collateral in its character, as it is claimed that the matter here in dispute was, but must be relevant to the issue being tried.   The evident design of the plaintiff's counsel was to show by Nelson if the witness denied that she had made the statement mentioned in the question, notwithstanding the denial, that she had agreed with him to suppress testimony in this case, the latter having no connection with Copeland, nor any reason to hold out any inducement to this witness to suppress her testimony.   The effect of this would be to prove by Nelson, contrary to the denials of the witness, that she had been guilty of bargaining with Nelson to suppress evidence in this case which she afterwards gave upon the stand.   This cross-question should have been allowed.   It is true, under the rule laid down in *Sharon* v. *Sharon*, 79 Cal. 673, and hereinafter applied in the present case, that a witness cannot be impeached by evidence of particular wrongful acts not bearing upon the matter in issue.   But the cross-question here called, not for testimony tending to show the commission of or willingness to commit an isolated wrongful act, but one which was connected with her own testimony in the case, given on behalf of the defendant.   Therefore the answer should have been allowed, as it seems to us that it is important that the jury should know whether a witness, after she has given her testimony in favor of one party, had at some previous time offered or agreed

for a consideration to suppress the very testimony she has given; for, if she did, it would certainly throw discredit upon her testimony as given, in the same manner as would the fact that she had made different statements upon a former occasion.

On cross-examination of the witness Speegle, a convict in the penitentiary, whose deposition was there being taken on behalf of the defendant, the plaintiff asked this question: " While you were in jail at Tehama, did you send word to Barkly to come and see you, at all? Answer: I am pretty certain that I did. I got out of jail the same night I was put in there. I was arrested, after my escape, in Nevada. While I was out I had no communication with plaintiff. I neither wrote to him nor sent any word to him. When I was brought back, I was in jail ten or twelve days before I was convicted. During that time I neither saw the plaintiff nor sent for him. I had counsel at my examination. Do not know who paid him. Made no defense at all in the justice's court. After I was arrested I told Leland Clark to tell plaintiff to go to Wiley Clark and get some money, so that the matter could be settled. Afterwards, Charley Tait told me the whole thing was settled about the cow business, — stealing. The whole affair was settled with Polk, and I would have been loose the next morning if I had not got out of jail that night. Tait told me that, while I was in the cell. He said, all that was necessary was for me to go before the justice of the peace the next morning, and I would have been dismissed. In that conversation plaintiff's name was mentioned, but I do not remember whether he said that plaintiff had settled it up. After my conviction I sent no word to the plaintiff about the matter, nor did I then, nor have I since, called on him for assistance, nor have I written to him." Afterwards, Charles Tait was called by the plaintiff as a witness, and after testifying that he was at the jail, and saw Speegle after his arrest, and had a conversation with

him, he was asked if he had at that time a conversation with Speegle in which Tait told him "that the whole affair relative to the cattle-stealing had been settled." This was objected to by defendant's counsel as irrelevant, immaterial, and incompetent, and that it was an attempt to impeach Speegle's testimony on a collateral point that was brought out by plaintiff on his cross-examination. The objection being sustained, exception was taken. After this, two other questions were asked Tait, evidently intended to contradict Speegle as to matters testified to by him on his cross-examination, brought out by the plaintiff, and relating to this conversation at the jail, to which Speegle alluded in his testimony. To them the same objection was made, ruling given, and exception taken. This matter of the Tait conversation was clearly collateral matter brought out on cross examination, and it was not permissible for the cross-examiner to impeach the witness by contradicting his statement thus brought out. (*People* v. *Dye*, 75 Cal. 112.)

Again, it is urged as error that the trial court would not permit the plaintiff to prove certain entries in his books, showing that he had put down therein the stolen cattle as being purchased by him, etc., with a view to show his good faith in receiving them from Speegle. It is said by appellant that these entries were part of the *res gestæ*, and as such admissible. "A litigant is not permitted to strengthen his case by his own declarations, whether written or verbal. They may be used against him, but not for him." (*Hausman* v. *Hausling*, 78 Cal. 286; Code Civ. Proc., sec. 1870.) Referring to a certain sum of twenty-eight dollars, which the appellant, when on the stand as a witness, had stated that he had paid to one Polk, the owner of the cattle that Speegle had stolen, the witness was asked by his counsel if he afterwards brought suit against Speegle for that amount. This was objected to by defendant's counsel, on the ground that it was irrelevant, immaterial, and incompetent, and that

a party's own acts and declarations are inadmissible as evidence in his favor. The objection was sustained, and the plaintiff excepted. The ruling, we think, was clearly right. This transaction was no part of the *res gestæ*. The suit was brought some days after the cattle were stolen, and Speegle had been arrested for stealing them.

There were various questions, on cross-examination, asked the witness Laura Mandeville as to acts which went to show her a woman " destitute of moral qualities." They were objected to, and objection sustained. This was properly done. She could not be impeached by evidence of specific wrongful acts. (Code Civ. Proc., sec. 2051; *Sharon* v. *Sharon*, 79 Cal. 633–673.)

Finally, it is contended by the appellant that the trial court erroneously admitted, over his objection, statements of Speegle to Laura Mandeville concerning his visit to Tehama, and his conversations with the plaintiff. These matters were related by Laura Mandeville when on the stand as a witness; the questions, to which answers were returned, being: "When he came back [meaning Speegle], did he tell you what he had done? What did he say Barkly said he would do with the cattle, if he would drive them over to him, if anything?" The objection was upon the ground that the matter sought to be brought out was irrelevant, immaterial, and incompetent, and was not responsive to any issue in the case, and was hearsay. Upon the other hand, the defendant, by his counsel, contended that the statements were those of a conspirator with the plaintiff in the theft of the cattle by Speegle, made before the theft, and while the conspiracy was in full force and effect.

There was evidence by Speegle tending to show that he had made a bargain in the latter part of July, or the first of August, 1884, with the plaintiff, Barkly, to drive cattle to him, and that as early as June of that year the plaintiff had said to Speegle that he, Speegle, had been

to a good deal of trouble; had the name of it, and might as well have it again; and that, if Speegle wanted to, to drive them up, and Barkly would do "the square thing" by him; and that, in accordance with this understanding, Speegle had delivered the cattle to the plaintiff. This tended to show a joint agreement between Barkly and Speegle as to the criminal enterprise; and the statements related by the woman Mandeville, as made to her by Speegle, were made before the cattle were stolen, and related to the enterprise with reference thereto in which he and Barkly were embarked, and within a day or two after the last statement was made to her Speegle drove the cattle to Tehama, and delivered them to Barkly. In the case of *People* v. *Collins*, 64 Cal. 295, it was said: "The conspiracy, according to the testimony, contemplated the robbing of stages and their passengers whenever and wherever opportunity offered. The law holds each party to it responsible for the acts of each co-conspirator done in pursuance and furtherance of the common design, which extends to the consequences which might reasonably be expected to flow from carrying into effect the unlawful combination. There was therefore no error in admitting in evidence against Collins the acts and declaration of Thorne in relation to the gun with which the murder was committed." So here, the conspiracy having been testified to by Speegle, his acts and declarations relative to the taking and delivering the cattle to Barkly, in pursuance of the common design, were evidence against Barkly as to his complicity in the affair, afterwards consummated.

On account of the error pointed out, we advise that the judgment and order be reversed.

VANCLIEF, C., and GIBSON, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are reversed.

A petition for a rehearing having been filed, the following opinion was rendered thereon on the 26th of December, 1890:—

The COURT.—Respondent's petition for a rehearing is denied. A re-examination of the record has not only confirmed us in the opinion that our decision was correct as to the ground upon which the judgment and order appealed from were reversed, but has satisfied us that we erred in sustaining the ruling of the superior court last noticed in the opinion of Commissioner Foote.

Mrs. Mandeville's testimony in regard to statements of Speegle, to the effect that plaintiff was his confederate in the proposed larceny of Polk's cattle, was clearly incompetent, as hearsay, and not within the rule of *People* v. *Collins,* 64 Cal. 295. The decision in that case was merely that, after competent evidence of a conspiracy to commit a crime, the declaration of one conspirator, accompanying an act done in furtherance of the common design, while the conspiracy is rife, is competent evidence against his confederate. This is no doubt correct, but it is not the law that a conspiracy between A and B can be proved as to either by the declarations of the other, as was allowed in this case, and our decision sustaining the ruling of the superior court on this point should not become the law of this case, or a precedent for others.