## George Kelly v. The State.

### No. 2611.   Decided January 21, 1903.

**1.—Continuance—Diligence.**

Where the indictment was pending at the March term, and the trial was at the October term, and the witnesses were absent at the beginning of the latter term, and no additional process was sued out for them by defendant at that time, the diligence was not sufficient to authorize the granting of the continuance.

**2.—Same.**

Sickness of a witness' son is no excuse for failure to issue process for the witness.   Process should have issued so that an officer could have been enabled to testify to the facts before the court.   The certificate of a physician was not sufficient.

**3.—Same—Old and Decrepit Witness.**

If a witness is so old and decrepit as that his condition would likely never permit him to attend, his deposition should be taken.

**4.—Same.**

An application for continuance will not be granted to prove that the prosecuting witness was of weak mind and could not be believed on oath. If the reputation of the witness was bad for truth and veracity, the application for continuance should have so stated.

**5.—Same—New Trial.**

Ordinarily, new trials will not be granted for absent testimony impeaching and cumulative in character.

**6.—Assault to murder—Evidence.**

On a trial of defendant for assault with intent to murder his brother, evidence is inadmissible to prove that at some former time, in the division of their mother's property, defendant was more kind to prosecutor than to his other brothers.   The evidence was not material.

**7.—Same.**

On a trial for assault with intent to murder, where the State asked the witness if, on the morning after the shooting, she was not told who the prosecutor said shot at him, to which the witness answered she was not; Held, no injury or error is shown.

**8.—Bill of Exceptions to Question.**

A bill of exceptions to a question asked a witness, to be entitled to consideration, must state the given answer to the question.

**9.—Admission of Testimony—Practice.**

It is within the discretion of the court to admit testimony, not in rebuttal, after the State has closed its testimony.

**10.—Impeachment of Witness.**

Where a predicate had been laid to contradict the witness, it was competent to prove that, on the night of the shooting, the said witnesses were told by the prosecutor who the party was who shot him, they having testified that prosecutor told them he did not know who shot him.

Appeal from the District Court of Jasper. Tried below before Hon. W. P. Nicks.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The indictment charged appellant with assault with intent to murder Marian Kelley, on the 24th day of December, 1900. Marian Kelly was appellant's brother, and he swore positively that it was defendant, his brother, who shot him. The record does not disclose the motive of defendant in shooting his brother.

*Seal & Bartow,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of assault with intent to commit murder, and his punishment assessed at confinement in the penitentiary for a term of two years.

Appellant made a motion for continuance, based on the absence of Mrs Vick Kelly, Hiram Kelly and Daniel Kelly, which was refused; and this action of the court was made a ground of the motion for new trial, which was overruled. An examination of the record discloses a want of diligence as to each of said witnesses. This case was tried on October 27, 1902. The indictment was pending at the previous March term. Two of said witnesses were subpoenaed for said term, and all of said witnesses were in default at the beginning of the fall term, which was the first Monday in October, but no additional process was sued out by appellant for either one. In order to excuse himself he says that the State had an attachment issued for Mrs. Vick Kelly, but there is no showing as to what became of this attachment, or whether in fact one was ever issued. As to Hiram Kelly, it is said that he was absent because of the sickness of his son, and the certificate of the physician is presented to that effect. This did not excuse the issuance of process and the undertaking by the officer to secure the attendance of the witness. If the witness' son was in such a critical condition as that his father could not leave his bedside, the officer would then have been enabled to testify before the court to that effect. The certificate of the physician does not carry with it this sort of potentiality. In fact, it is of little worth. As to Daniel Kelly, he says that he was old and decrepit, and was temporarily sick, and so could not attend. It is not shown that this witness' condition would ever permit him to attend. If such is the case, his deposition should have been taken. The testimony of Mrs. Vick Kelly was both of an impeaching and cumulative character. The testimony of Hiram Kelly was to impeach the witness Marian Kelly also. Daniel Kelly, it is said, would testify that Marian, the assaulted party, was of weak mind, and that he would not believe him on oath. We do not understand this

to be the method of impeachment of a witness. If the reputation of said witness for truth and veracity was bad, the application should have stated it. We hardly think that the fact that Marian Kelly was of weak mind, under the circumstances of this case, was legitimate evidence. This character of testimony was also cumulative, as the facts were proved by another witness. We do not regard any of this testimony as material. As to impeaching and cumulative evidence, new trials are not ordinarily granted for the want of such testimony.

Appellant assigns as error the refusal of the court to permit Wade Kelly to testify that at some former time, in the division of the property of the estate of the mother of the witnesses, Marian Kelly and defendant, the defendant was more kind to Marian Kelly than to his other brothers, evidencing a partiality toward him. As shown by the bill of exceptions, one witness did testify to this character of evidence, but it does not occur to us that the same was material. It was an isolated fact, and not evidence of a general character indicating the good feeling between appellant and the assaulted party. Besides, this does not appear to have been an issue in the case. Marian Kelly, the assaulted party, himself testifies to the previous good feeling between defendant and himself, and so did other witnesses.

Appellants also insists that the court committed an error in the following matter, to wit: When J. F. Smith was on the stand, the State asked him the following question: "On the morning after the alleged shooting, did Mrs. Wright tell you who Marian Kelly said it was that shot him?" And the witness answered that she did not. If this was the answer of the witness we fail to see how it could injure appellant. If she did tell him, the answer in the bill does not show that she told him who it was. As the bill is presented, no error is shown.

The next bill shows that Jim Kelly was asked on cross-examination by the State the following question: "Did you see Ramsey Gilcrease on the night of the 24th of December, 1902?" It is said in the bill that the witness was required to answer the above question, but what his answer was is not disclosed. So no error is presented here.

The fifth bill shows that after the State had closed its case, the witness Joe Jones was placed on the stand, and in answer to questions by the State, was permitted to testify, "that on the morning after the alleged shooting, George Kelly stated at my house that Marian Kelly would accuse him (George Kelly, defendant) of doing the alleged shooting." This testimony was objected to by defendant, upon the following grounds: that it was immaterial, irrelevant, and calculated to injure the rights of the defendant; and that it was offered after the State had closed its testimony; and was in rebuttal of no testimony introduced by the defendant. The court explains the admission of this testimony by stating that the district attorney, before the argument to the jury began, stated to the court that he had overlooked the above evidence, and asked permission to introduce it. This was entirely within the discretion of the court.

Bill number 6 shows the following: Counsel for the State asked the witness Laban Kelly this question: "When did you learn that George Kelly shot Marian Kelly? And when you learned that George Kelly shot Marian Kelly, who told you?" The bill says that the witness was allowed to answer said question, but what his answer was is not disclosed; and so this matter can not be revised.

· Bill number 7 is taken to the testimony of Mrs. Wright, who was permitted, over appellant's objection, to state that on the night of the shooting she heard Marian Kelly tell Jim Kelly and Boss Kelly that George Kelly shot him. This was objected to on the ground that the witness Mrs. Wright heard only a part of the conversation at the time. As explained by the court, however, the testimony was proper and legitimate. It is shown that Boss and Jim Kelly testified for appellant that on that occasion Marian Kelly stated to them he did not know who shot him. The predicate was laid for their contradiction, and Mrs. Wright testified as above indicated. Her testimony was competent, although she may not have heard all of the conversation. But we do not understand that the bill shows that she did not hear it all. This is merely a ground of objection stated. We see no error in the record, and the judgment is affirmed.

*Affirmed.* ·