[Crim. No. 67. First Appellate District.—February 4, 1907.]

## THE PEOPLE, Respondent, v. YE FOO, Appellant.

CRIMINAL LAW—MURDER—DEFENSE OF ALIBI—BURDEN OF PROOF—REBUTTAL.—Upon a trial for murder, an alibi relied upon by the defendant is an affirmative defense, upon which defendant has the burden of proof. The prosecution, in its evidence in chief, is not bound to anticipate and forestall the defense of alibi; and where the defendant has introduced evidence to prove it, the prosecution is entitled to offer evidence in rebuttal to disprove it.

ID.—REBUTTING EVIDENCE—FLIGHT OF DEFENDANT.—When the defendant, charged with murder in Fresno, was seen there on the day of the homicide, according to some testimony for the prosecution, but called witnesses to prove that on that day he was in San Francisco, evidence was admissible in rebuttal to show that past noon on the day after the homicide he purchased a ticket at Madera for San Francisco, and returned there on that day. The fact that the rebutting evidence tends incidentally to show the flight of the defendant from the scene of the homicide cannot render it inadmissible in rebuttal to disprove the alibi testified to.

ID.—IMPEACHMENT OF WITNESS—CONVERSATION—FOUNDATION—CORRUPT ATTEMPT TO DISSUADE WITNESS.—Though it is better practice in impeaching a witness by a conversation had with him to call his attention on cross-examination to the time, place, and parties present, yet where he was asked if he did not at a certain time and place offer another witness twenty dollars not to testify that he saw defendant in Fresno on the day of the homicide, and though he denied such offer, by giving a different version of the conversation, showed that he understood the time, place and circumstances of it, the foundation is sufficient; and the other witness may con-

tradict him by proving such corrupt attempt to dissuade him from so testifying.

ID.—DISTINCTION AS TO IMPEACHING EVIDENCE.—A witness for defendant who has denied on cross-examination that he has attempted corruptly to dissuade a witness for the prosecution from attending the trial, or giving certain evidence, may be contradicted in this respect. A distinction exists between the right to contradict a witness as to any fact relating to his conduct in connection with the action on trial and the right to impeach his credit generally.

ID.—ADMONITION TO JURY—OMISSION IN RECORD—PRESUMPTION UPON APPEAL.—Where the record upon appeal merely fails to show that the court admonished the jury at each adjournment as required by section 1422 of the Penal Code, this court, in the absence of any showing to the contrary, will presume that the court below did its duty, and gave the proper admonition at each adjournment.

ID.—INSTRUCTIONS—MURDER IN FIRST DEGREE—PREMEDITATION—RESULT OF CONCURRENCE WITH KILLING.—Where the evidence disclosed no self-defense or facts justifying a verdict of manslaughter or murder in the second degree, an instruction relating to murder in the first degree that ''it is only necessary that the act of killing be preceded by a concurrence of will, deliberation and premeditation on the part of the slayer; and if such is the case, the killing is murder of the first degree, no matter how rapidly these acts of the mind may succeed each other, or how quickly they may be followed by the act of killing,'' is not erroneous as omitting the words ''*and the result of*'' after ''*preceded by*,'' where in a preceding part of the instructions the jury had been expressly told that ''the intent to kill must be the result of deliberate premeditation.''

ID.—REFUSAL OF REQUEST EMBODIED IN CHARGE—CONTINUANCE OF PRESUMPTION OF INNOCENCE.—The refusal of a correct instruction requested by the defendant as to the continuance of the presumption of innocence, throughout the entire case, which might properly have been given, was not prejudicially erroneous, where the requested instruction was substantially included in the charge of the court.

ID.—SUFFICIENCY OF CHARGE OF COURT.—*Held*, that the instructions embodied in the charge of the court, as a whole, gave a full and fair statement of the law pertaining to each and every phase of the case.

ID.—MISCONDUCT OF DISTRICT ATTORNEY—ARGUMENT.—*Held*, that in the argument of the district attorney to the jury, he was not guilty of misconduct in transcending the limits of legitimate argument.

ID.—REFERENCE TO FAILURE OF CODEFENDANT TO TESTIFY.—It was not error for the district attorney to refer in his argument to the fact that a codefendant was not called upon to testify for the defendant.

ID.—EXCEPTIONS NOT AVAILABLE—RULING NOT ASKED FOR.—Exceptions to the remarks of the district attorney, which were not called to the attention of the court and upon which no ruling was asked, are not available. In case of objectionable remarks by the district attorney, defendant's counsel must invoke the aid of the court to prevent the remarks from injuring the defendant, before he will be allowed to urge the matter as error in this court.

ID.—NEWLY DISCOVERED EVIDENCE—DISCRETION OF COURT.—Where the affidavits of newly discovered evidence showed that it was mainly cumulative and partly impeaching evidence, and there were counter-affidavits, the court might consider them in the light of all that had occurred during the trial, and where no abuse of discretion appears in refusing to grant a new trial on that ground, its action will not be disturbed upon appeal.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order denying a new trial. George E. Church, Judge.

The facts are stated in the opinion of the court.

Everts & Ewing, for Appellant.

The whereabouts of the defendant at the time of the crime was part of the original case, and is not evidence in rebuttal. (2 Bishop on Criminal Law, sec. 32; *People* v. *Quick,* 58 Mich. 321, 25 N. W. 302; *People* v. *Hallhouse,* 80 Mich. 580, 45 N. W. 482; *State* v. *Hunsaker,* 16 Or. 497, 19 Pac. 605, 607.) The record should disclose the fact that the statutory admonition was given. (Pen. Code, sec. 1122; *People* v. *Thompson,* 84 Cal. 598, 24 Pac. 384; *People* v. *Maughs,* 144 Cal. 253, 268, 86 Pac. 187.) There was error in the instructions given and refused. (*People* v. *Maughs,* 144 Cal. 253, 86 Pac. 187; *People* v. *Winthrop,* 118 Cal. 85, 50 Pac. 390; *State* v. *Ryno,* 68 Kan. 348, 74 Pac. 1114, 64 L. R. A. 303.) There was prejudicial misconduct of the district attorney in the course of his argument in assuming facts not proved. (*People* v. *Mitchell,* 62 Cal. 411; *People* v. *Valliere,* 127 Cal. 67, 59 Pac. 295; *People* v. *Wells,* 100 Cal. 459, 34 Pac. 1078; *Ivey* v. *State,* 113 Ga. 1062, 39 S. E. 423, 54 L. R. A. 959; *People* v. *Cook,* 148 Cal. 334, 83 Pac. 43; *People* v. *Smith,* 121 Cal. 355, 53 Pac. 802.) It was prejudicial error for him to allude to the failure of any defendant or codefendant to testify. (*People* v. *Brown,* 53 Cal. 66; *People* v. *Taylor,*

36 Cal. 522; *People* v. *McGungill*, 41 Cal. 429; *People* v. *Sansome*, 98 Cal. 285, 33 Pac. 202; *Conn* v. *State*, 11 Tex. App. 390; *State* v. *Harper*, 33 Or. 524, 55 Pac. 1075; *Brooks* v. *State*, 123 Ala. 24, 26 South. 329; *Coppin* v. *State*, 123 Ala. 58, 26 South. 333.) The court improperly allowed evidence to impeach the witness Quong Wow Lung, no sufficient foundation having been laid for that purpose.

U. S. Webb, Attorney General, C. N. Post, Assistant Attorney General, J. Charles Jones, and Frank H. Kauke, Deputy District Attorney, for Respondent.

The rebuttal evidence for the prosecution was admissible to disprove the alibi testified to for the defendant. (*Wade* v. *Thayer*, 40 Cal. 584; *People* v. *Freeman*, 92 Cal. 365, 28 Pac. 261; *Sampson* v. *Hughes*, 147 Cal. 62, 81 Pac. 292; *State* v. *Lewis*, 69 Mo. 92; *Commonwealth* v. *Moulton*, 4 Gray, 39; *State* v. *Maher*, 74 Iowa, 77, 37 N. W. 2; *Goldsby* v. *United States*, 160 U. S. 70, 16 Sup. Ct. Rep. 216; *Perkins* v. *State* (Tex. App.), 80 S. W. 619; *State* v. *Cooper*, 83 Mo. 638.) A sufficient foundation was laid to contradict the witness Quong Wow Lung on the subject of corruptly attempting to bribe the witness Edgar. (*Lewis* v. *Steiger*, 68 Cal. 200, 8 Pac. 884; *People* v. *Lambert*, 120 Cal. 176, 52 Pac. 307; *Barkly* v. *Copeland*, 86 Cal. 486, 487, 25 Pac. 1.) The fact that the record does not show affirmatively that at every adjournment the jury were admonished is not ground for reversal. (*People* v. *Coyne*, 116 Cal. 295, 48 Pac. 218; *People* v. *Kramer*, 117 Cal. 659, 49 Pac. 842; *People* v. *Thompson*, 84 Cal. 606, 24 Pac. 384.) There was no error in the instructions taken as a whole, as they must be. (*People* v. *Worden*, 173 Cal. 569, 45 Pac. 844; *People* v. *Weber*, 125 Cal. 562, 58 Pac. 133; *People* v. *Mendenhall*, 135 Cal. 346, 67 Pac. 325; *People* v. *Davis*, 1 Cal. App. 8, 81 Pac. 716, 88 Pac. 1101; *People* v. *Armstrong*, 114 Cal. 573, 46 Pac. 611.) A bald exception to remarks of the district attorney without request for the action of the court is insufficient. (*St. Louis* v. *Irwin*, 37 Kan. 701, 1 Am. St. Rep. 274, 16 Pac. 146; *Lunsford* v. *Deitrich*, 93 Ala. 565, 30 Am. St. Rep. 86, 9 South. 308; *People* v. *Shears*, 133 Cal. 159, 65 Pac. 295; *People* v. *Beaver*, 83 Cal. 120, 23 Pac. 321; *People* v. *Shem Ah Fook*, 64 Cal. 383, 1 Pac. 347; *People* v. *Kramer*, 117 Cal. 650, 49 Pac. 842; *People* v. *Lane*, 101 Cal.

518, 36 Pac. 16; *People* v. *Warner,* 147 Cal. 553, 82 Pac. 196; *People* v. *Kelly,* 146 Cal. 122, 79 Pac. 846; *People* v. *Frigerio,* 107 Cal. 153, 40 Pac. 107.) There was no misconduct in the argument of the district attorney. (*People* v. *McMahon,* 124 Cal. 436, 57 Pac. 224; *People* v. *Salas,* 2 Cal. App. 537, 84 Pac. 295; *People* v. *Glaze,* 139 Cal. 159, 72 Pac. 965; *People* v. *Wheeler,* 65 Cal. 77, 2 Pac. 892; *People* v. *Warren,* 147 Cal. 546, 553, 82 Pac. 196; *Tucker* v. *Heniker,* 41 N. H. 323.) It was not error to refer to the failure of a codefendant to testify. (*State* v. *Mathews,* 98 Mo. 125, 10 S. W. 144, 11 S. W. 1135; *State* v. *Millmeier,* 102 Iowa, 692, 63 Am. St. Rep. 479, 72 N. W. 275.) The prosecuting attorney may allude to the failure of defendant to produce any witnesses within his power to produce. (2 Ency, of Pl. & Pr. 722; *United States* v. *Cundler,* 65 Fed. 308; *Commonwealth* v. *McCabe,* 163 Mass. 98, 39 N. E. 777; *Commonwealth* v. *Clark,* 14 Gray, 367; *Hall* v. *State* (Tex.), 22 S. W. 141; *Crumes* v. *State,* 28 Tex. App. 516, 19 Am. St. Rep. 853, 13 S. W. 868; *Jackson* v. *State,* 31 Tex. Cr. App. 342, 20 S. W. 921; *Mayes* v. *State,* 33 Tex. Cr. 33, 24 S. W. 421; *State* v. *Kiger,* 115 N. C. 746, 20 S. E. 456; *State* v. *Toombs,* 79 Iowa, 741, 45 N. W. 300; *People* v. *Hovey,* 92 N. Y. 559.)

COOPER, P. J.—Defendant was charged by the district attorney of the crime of murder in killing one Louie Mong with malice aforethought on the third day of October, 1905, in the city of Fresno. After a trial, he was found guilty of murder in the first degree and judgment was accordingly entered, sentencing him to imprisonment for life. This appeal is from the judgment and order denying his motion for a new trial.

There was evidence to the effect that shortly after 10 o'clock P. M. of the day named in the information the deceased was shot and killed while in his room in Chinatown in the city of Fresno, by the defendant, who had just entered the room accompanied by four other Chinamen, all of whom were armed, and some of whom took part in the killing. After the killing the defendant and the four other Chinamen who were evidently acting in concert with him, left the room and came out of the stairway of the house into the lighted alley with their guns still in their hands. No claim is made as to the insufficiency of the evidence to justify the verdict, but it is argued

that certain errors of law occurred during the trial to defendant's injury, for which a new trial should have been granted, and of such character as to call for a reversal of the judgment by this court.

The first claim made by defendant is that the court erred in allowing the prosecution to call witnesses in rebuttal upon the questions of an alibi relied upon by defendant, who had introduced several witnesses to prove that he was in San Francisco and not in Fresno at the time of the homicide. The claim is made that the testimony so received is not rebuttal, and that it was incumbent on the prosecution to prove as a part of its original case the whereabouts of defendant at the time of the killing, and to make such proof by all the witnesses it intended to call upon the question under any circumstances. In other words, the proposition contended for is, that if the prosecution should prove the commission of a crime at a certain time and place by the two or three witnesses who were present, and the defendant afterward calls ten witnesses who each testifies to the effect that at the same time the defendant was at a certain room in a certain house in a different place, the people should not be allowed to call any witnesses in rebuttal. If such a proposition could be maintained the people in many cases would be powerless and crime would go unpunished. The district attorney might have evidence to show that each of the ten witnesses was not in the place testified to by them, but in a different place at the time and at the moment of the homicide, and yet the rule contended for would preclude him from showing it. The defense of an alibi is an affirmative one, and if established, a complete one, and the burden is upon the defendant to prove it. The object of the trial is to get at the truth, and while the rights of the defendant should be always carefully guarded, and the procedure designed for his protection substantially followed, yet the law will not reduce its rules to an absurdity in order to prevent a fair and full investigation by the prosecution. The district attorney had no reason to anticipate the defense of an alibi, and the evidence was competent, and in rebuttal. (*State* v. *Lewis,* 69 Mo. 92; *Commonwealth* v. *Moulton,* 4 Gray, 39; *State* v. *Maher,* 74 Iowa, 77, [37 N. W. 2]; *Goldsby* v. *United States,* 160 U. S. 70, [16 Sup. Ct. Rep. 216]; *Wade* v. *Thayer,* 40 Cal. 584.)

One Leu Tun was called by the prosecution, and under defendant's objection, was allowed to testify in rebuttal that on the fourth day of October, 1905, the day after the homicide, the defendant purchased a ticket at Madera, and there boarded the northbound train for San Francisco, and that witness went to San Francisco with him on the same train. It is said that the testimony was not rebuttal, but independent evidence tending to show flight of the defendant from the scene of the homicide. The evidence, if true, showed that the defendant was going away from the vicinity of Fresno toward San Francisco the day after the homicide. The defendant claimed and endeavored to establish by witnesses that he was at a certain room in San Francisco on the night of October 3d when the homicide was committed. The fact that a little after noon on the following day he was seen to purchase a ticket and board a train at a station north of Fresno, and nearly two hundred miles south of San Francisco, tended at least in some degree to disprove the defendant's claim that he was in San Francisco at the time of the homicide. It also tended to prove the theory of the prosecution that he was in Fresno and committed the murder. The fact that the evidence might have tended to prove the flight of the defendant did not make it, for this reason, inadmissible. The main purpose and object of the testimony was to be considered in determining its admissibility. If all evidence should be excluded because it might be objectionable on certain theories for certain reasons, or because it might tend in a more or less degree to prove indirectly some other fact, the administration of justice would be impracticable, and in many cases impossible. The law aims to arrive at the truth upon broader lines and by all legal means which tend to prove the fact under investigation.

Defendant's counsel argue at considerable length that the court erred in permitting evidence tending to impeach defendant's witness, Jue Doe Men, who testified in direct examination that he was at the Chinese theater in the city of Fresno at the very time of the homicide, and that he then and there saw Wong Dock, who is jointly charged with defendant, at the theater. In cross-examination the district attorney called the attention of the witness to a conversation with one Edgar, who was a witness for the prosecution, in which conversation the witness was asked in effect if he did not offer, or intimate to Edgar, that he would give him twenty dollars if he would

testify that he was not positive that he saw defendant in Fresno about the time of the homicide. The conversation to which the attention of the witness was called, if true, would tend to show that he was an interested witness and not worthy of credit. It is said that the attention of the witness was not called to the parties present at the time of the alleged conversation. This was not one of the grounds of objection to the question, and if it had been it would not have been a valid objection. The objection on this ground should have been to the impeaching testimony of Edgar when offered. It appears by the record that this was done, and Edgar's testimony objected to upon the ground that the proper foundation had not been laid. The better course would have been to have called the attention of the witness Jue Doe Men to the persons present at the alleged conversation, but the omission to do this is not necessarily fatal to receiving the impeaching testimony. The attention of the witness was called to the circumstances of time and place, and it clearly appeared that he understood the occasion referred to, and the conversation to which his attention was directed. He gave his version of the conversation, and denied that he offered Edgar twenty dollars. His words were: "I say this way, I say, 'You know darn well Yee Foo never came on train, you see one, you never know him.' I say, 'You know darn well not Yee Foo.' I say, 'I bet you I pick fifty Chinamen, just like workingmen, take them to China theater, you can't pick Yee Foo out,' that is what I told him." If the witness understood the circumstances of time and place, the object of this section of the code is satisfied. (*Lewis* v. *Steiger,* 68 Cal. 200, [8 Pac. 884].) Where a witness for defendant has attempted corruptly to dissuade a witness for the prosecution from attending the trial, or from giving certain evidence, and denies on his cross-examination that he has done so, the plaintiff is entitled to give evidence to contradict him in this respect. A distinction is made between the right to contradict a witness as to any fact relating to his conduct in connection with the action on trial and the right to impeach him by showing that he is not a man worthy of credit generally. (*Lewis* v. *Steiger,* 68 Cal. 200, [8 Pac. 884] ; *People* v. *Lambert,* 120 Cal. 170, [52 Pac. 307] ; *Barkly* v. *Copeland,* 86 Cal. 483, [25 Pac. 1].)

4 Cal. App.—47

The record fails to show that the court admonished the jury at each adjournment, as required by section 1122 of the Penal Code, not to converse among themselves, nor with anyone else, on any subject connected with the trial, or to form or express any opinion thereon until the cause is finally submitted. In the absence of a showing to the contrary we will presume that the court did its duty, and gave the proper admonition at each adjournment.

In the case of *People* v. *Coyne*, 116 Cal. 295, [48 Pac. 218], it appeared affirmatively that the court did not admonish the jury at a certain adjournment of court, and the court said: "But the error in this regard is technical, and not of that importance to demand a reversal of the judgment and a new trial."

In *People* v. *Thompson*, 84 Cal. 598, [24 Pac. 384], cited by defendant, it appeared affirmatively that the court did not admonish the jury, and yet the court said: "In the present case no injury appears to have resulted, and there may have been no prejudicial error."

In *People* v. *Maughs*, 149 Cal. 253, [86 Pac. 187], the opinion does state that the record should disclose the fact that the jury were admonished, but the case was not reversed on this point. The learned judge who wrote the opinion in the Maughs case cites no authority for the statement that the record should disclose the fact of such admonition being given. The only case is *People* v. *Thompson*, 84 Cal. 598, [24 Pac. 254], and it expressly states that the court did not admonish the jury.

The court, at the request of the prosecution, instructed the jury as follows: "There need be no appreciable space of time between the intention to kill and the act of killing—they may be as instantaneous as successive thoughts of the mind. It is only necessary that the act of killing be preceded by a concurrence of will, deliberation and premeditation on the part of the slayer, and if such is the case the killing is murder of the first degree, no matter how rapidly these acts of the mind may succeed each other, or how quickly they may be followed by the act of killing."

It is seriously urged that the court erred in giving the above instruction, and it is claimed that the supreme court expressly so held in *People* v. *Maughs*, 149 Cal. 253, [86 Pac. 187]. It is said that the instruction should have read: "It is only

necessary that the act of killing be preceded by *and the result of* a concurrence of will,'' and so forth, and that the omission of the words ''result of'' is fatal, because under the instruction as given a killing, which was not the result of deliberation and premeditation, but which had at any time been preceded by it, would be murder in the first degree. The argument would be plausible in the case of a killing in a sudden quarrel or heat of passion, or under circumstances that might authorize the jury to find a verdict of manslaughter or murder in the second degree, but in this case there is no pretense of any evidence that would justify any such verdict. The defendant had left San Francisco, armed himself, and with four associates entered the room of deceased, and began shooting, and without any attempt at justification killed the deceased. There was no question of self-defense. There was no conflict as to who began the shooting. There was not even a word said by the deceased to justify the defendant in becoming angry at him. But aside from this the defendant's counsel did not insert in their brief two very important sentences which immediately precede the instruction. This part of the instruction, which must be read with it and as a part of it, is as follows: ''The intent to kill must be the result of deliberate premeditation. It must be formed upon a pre-existing reflection, and not upon a sudden heat of passion, sufficient to preclude the idea of deliberation.'' By this the jury are expressly told that the killing must be the result of deliberate premeditation. We cannot conceive that a reasonable person of common understanding would be misled by this instruction as given. An instruction identical with the one complained of here was given in *People* v. *Suesser,* 142 Cal. 354, [75 Pac. 1093], as appears by the transcript in that case. It was approved by the court in bank.

In *People* v. *Weber,* 149 Cal. 325, [86 Pac. 671], the instructions were approved and held not to be erroneous, and the transcript in that case shows an instruction in the same language as the one complained of here. The same instruction in effect was approved in *People* v. *Nichol,* 34 Cal. 215; *People* v. *Iams,* 57 Cal. 115; *People* v. *Williams,* 43 Cal. 344.

In the Maughs case there was testimony that the defendant in self-defense shot decedent, a young and vigorous man, his physical superior, who was making an assault upon him with a deadly weapon. The case was reversed upon several

grounds, and not solely upon the instruction omitting the words *"result of."* Not only this, but the instruction was not preceded by language similar to that quoted as part of the instruction in this case. We, therefore, are not disposed to extend the doctrine of the Maughs case beyond its own facts, and we apprehend there will be few cases in which it cannot be distinguished.

The court refused to give, at the request of the defendant, the following instruction: "The presumption of the defendant's innocence does not cease at any time during the taking of the testimony or of the argument, nor does it cease when the case is finally submitted to you for your consideration, but this defendant is presumed to be innocent all through the case, and in your deliberations in the jury-room, you are to examine the testimony in the light of that presumption." The instruction might well have been given, but the failure to give it is not such error as to justify a reversal of the case. The jury were elsewhere told that the presumption of innocence "attaches to every stage of the proceeding," and that the burden is upon the prosecution to prove each material fact beyond a reasonable doubt and to a moral certainty, and that this burden "remains through the entire case."

We have examined the other alleged errors as to giving and refusing instructions, and find no occasion for discussing them separately. The instructions as a whole gave to the jury a full and fair statement of the law pertaining to each and every phase of the case.

Counsel have devoted a great part of their brief to discussing certain remarks made by the district attorney in his address to the jury. We have carefully read the record, and the briefs, and conclude that the matter to which our attention is called would not justify a reversal of the case. District attorneys, in their zeal to obtain convictions, often overstep the proper bounds, and by intimation, innuendo or statement, get before the jury matters not in evidence. When such course has been willfully pursued or where something is stated and represented as a fact, and the statement is damaging and not borne out by the record, the courts of appeal have not hesitated to reverse the case, and grant a new trial. But in the argument of a case, where counsel has become zealous in his cause, and upon his own view of the case works his mind up to believe certain things, he is apt to exaggerate

and draw upon his imagination. We apprehend that this is well known to juries, and for this reason it would have to be a clear case of such misconduct on the part of the district attorney to justify a reversal. In the case at bar it is evident that the theory of the district attorney was that the killing was the result of a decree or order of the highbinders, or of a society known as the Bing Kung Tong. There is evidence that one Jake Num, living at 41 Sullivan alley, in the city of San Francisco, belonged to the Bing Kung Tong. One Hammel was employed as his body guard. Defendant was the cook employed by Jake Num. Other Chinamen were there, and it was at this place, 41 Sullivan alley, where defendant attempted to locate himself at the time of the homicide by the testimony of several witnesses. The district attorney, after referring to the society and what he called "the alibi factory," used the language of which most complaint is made, and which appears the most objectionable, which is as follows: "Suppose Lew Suey had been a member, and Yee Foo and his associate highbinders had killed him on that evening, and they had gone back, as he did go back, by a conveyance to Madera, and from there to San Francisco, and had reported to Jake Num and given an account of their stewardship, and he said: 'What have you done, killed Louie Mong?' 'We killed him.' 'Is that all?' 'Well, there was another fellow there and we thought we best kill him.' 'Yes, but who was he?' 'Why, it was Lew Suey, a member of the Bing Kung Tong.' Now, I don't suppose that Yee Foo would be retained in the employ of Jake Num for other murders if, when he goes out to do his bidding to kill one man of the Hip Sing Tong, that he at the same time, and simply for the purpose of covering up his tracks, kills a man of the Bing Kung Tong, one of their own members."

It is evident that the district attorney was partly drawing upon his imagination by way of illustration. He finally said, "Now, I don't suppose Yee Foo would be retained in the employ of Jake Num for other murders if," etc. Defendant appeared from the testimony to have been in the employ of Jake Num. The evidence justified the district attorney in claiming that defendant committed murder in the case in which he was being tried. As to whether or not he would be retained for other murders had reference to the future. He did not accuse the defendant of having ever committed

any specific crime other than the one for which he was being tried. He did not state anything as a fact against defendant that was not in evidence. In the leading case of *Tucker* v. *Heniker,* 41 N. H. 323, the court said: "The right of discussing the merits of the case, both as to the law and the fact, is unabridged. The range of discussion is wide. He may be heard in argument upon every question of law. In his addresses to the jury it is his privilege to descant upon the facts proved or admitted in the pleadings; to arraign the conduct of parties; impugn, excuse, fortify or condemn motives, as far as they are developed in the evidence; assail the credibility of witnesses, when it is impeached by direct evidence, or by the inconsistency or incoherence of their testimony, their manner of testifying, their appearance on the stand, or by circumstances. His illustrations may be as varied as the resources of his genius; his argumentation as full and profound as his learning can make it; and he may, if he will, give play to his wit, or wings to his imagination." This case was referred to and approved in *People* v. *Molina,* 126 Cal. 505, [59 Pac. 34].

In *People* v. *McMahon,* 124 Cal. 436, [57 Pac. 224], the district attorney, after speaking of the defendant as "Old Harris, the whisky seller," said that he "ought to be in the penitentiary," and the court held that the language was not sufficient to call for a reversal of the case.

In *People* v. *Wheeler,* 65 Cal. 77, [2 Pac. 892], it was held not to be error when the district attorney said to defendant, "You sought this trouble with him and made a cowardly attack on him."

In *People* v. *Glaze,* 139 Cal. 159, [72 Pac. 965], the language of the district attorney was (referring to defendant): "When this foul fiend of hell sent Trewella to his Maker, the motive came from a heart as black as the crime committed." It was held not to constitute error.

In *People* v. *Soeder,* 150 Cal. 12, [87 Pac. 1016], the remark was: "This man Leon Soeder would cut another man's throat any day in the week, whether he wanted to marry Catherine Flatley or not," and it was held not to constitute error.

In *People* v. *Weber,* 149 Cal. 325, [86 Pac. 671], the attorney general stated his solemn belief in the guilt of defendant, and it was claimed that he committed error in so doing. The court said: "A prosecuting officer, therefore, has the

right to state his views, his beliefs, his conviction as to what the evidence establishes.'' (See, further, *People* v. *Romero,* 143 Cal. 460, [77 Pac. 163] ; *People* v. *Salas,* 2 Cal. App. 537, [84 Pac. 295] ; *Hawkins* v. *State* (Tex. Cr.), 71 S. W. 756; *State* v. *Millmeier,* 102 Iowa, 692, [72 N. W. 275].)

We have discussed the latter point upon its merits, but we might well have held the remarks not subject to review for another reason. The record merely shows that the language of the district attorney ''is excepted to as unsupported by any evidence, and as prejudicial to the substantial rights of the defendant.'' The court was not asked to strike out the objectional remark, nor does it appear that the court ruled upon the exception. It is but fair to require defendant's attorney, in case of objectionable remarks by the district attorney, to call the court's attention to them then and there, and invoke the aid of the court to prevent the remarks from injuring the defendant, before he will be allowed to urge the matter as error in this court. In such case this court will not hold the remark error upon which to reverse the case. (*People* v. *Shears,* 133 Cal. 159, [65 Pac. 295] ; *People* v. *Beaver,* 83 Cal. 419, [23 Pac. 321] ; *People* v. *Ah Fook,* 64 Cal. 383, [1 Pac. 347] ; *People* v. *Kramer,* 117 Cal. 650, [49 Pac. 842] ; *Lunsford* v. *Dietrich,* 93 Ala. 565, [30 Am. St. Rep. 79, 9 South. 308].)

There was no error in the reference of the district attorney to the failure of Wong Dock, who was jointly charged with defendant, to testify in the case. No reference was made to the failure of the defendant to testify, and no reason occurs to us why the remark was not legitimate argument as to a codefendant. The law does not exempt a defendant, who is jointly charged, from being a witness either for or against his codefendant. (*Ex parte Stice,* 70 Cal. 51, [11 Pac. 459] ; *People* v. *Plyer,* 121 Cal. 162, [53 Pac. 553].) If such codefendant should be called, and should refuse to testify on the ground that his evidence might tend to incriminate himself, that would present a different question. Wong Dock was a competent witness, and was in the county jail, and subject to the process of the court. He could have been called by the prosecution or by the defendant. The cases cited by defendant were most of them where the law, under which the decision was rendered, makes the wife, or husband, or

codefendant, an incompetent witness. Of course, if the law were such that Wong Dock was prohibited from being a witness the cases cited would apply, and there would be much reason for following them. The case principally relied upon by defendant (*People* v. *Smith*, 121 Cal. 355, [53 Pac. 802]), is not in point. There the district attorney, after commenting on the fact that defendant had not called John Smith, his brother, who was present at the shooting, continued, after objection was made, and said, "The defense is afraid of it, or they would never squeal"; and again, after a further objection was made, the district attorney said: "The presumption of the law is, that if John Smith had testified before you gentlemen as to the facts in this case—the presumption of the law is that his testimony would have been adverse to the defense." The defendant's counsel, objecting to the statement of the district attorney, asked the court to instruct him not to pursue it, and the court overruled the objection, and apparently approved the conduct of the district attorney, and told defendant's counsel not to "interrupt him any more." The court below, by its rulings, had, as the supreme court said, "impliedly told the jury that both the statement of fact and the deduction made by the district attorney were proper matters for their consideration." In the case at bar there was nothing said to the jury as to a presumption from the failure to call Wong Dock. The court's attention was not called to the matter, and no ruling made. The defendant merely excepted to the statement.

That it is not error for a prosecuting attorney to refer to the fact that a codefendant has not been called to testify has been held in *State* v. *Mathews*, 98 Mo. 125, [10 S. W. 144, 11 S. W. 1135]. (See, further, *State* v. *Millmeier*, 102 Iowa, 692, [72 N. W. 275]; *United States* v. *Candler*, 65 Fed. 308; *Commonwealth* v. *McCabe*, 163 Mass. 98, [39 N. E. 777]; *Commonwealth* v. *Clark*, 14 Gray, 367; *Hall* v. *State* (Tex. Cr.), 22 S. W. 141].)

We have carefully read the affidavits in regard to newly discovered evidence. The main portion of them relates to statements as to evidence that would be cumulative. Several of them relate to statements that could only be admissible by way of impeachment. There were counter-affidavits, and the learned judge who tried the case considered them in the light of all that had occurred during the trial. The court does not

appear to have abused its discretion in denying the motion on this ground. (*People* v. *Rushing,* 130 Cal. 449, [80 Am. St. Rep. 141, 62 Pac. 742] ; *People* v. *Warren,* 130 Cal. 693, [63 Pac. 86] ; *People* v. *Clark,* 130 Cal. 642, [63 Pac. 138] ; *People* v. *Buckley,* 143 Cal. 375, [77 Pac. 169] ; *People* **v.** *Weber,* 149 Cal. 325, [86 Pac. 671].)

The judgment and order are affirmed.

Hall, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 5, 1907.