[Crim. No. 2835.   Third Dist.   Nov. 25, 1958.]

THE PEOPLE, Respondent, v. ALBERT DWIGHT LARGENT, Appellant.

*Assigned by Chairman of Judicial Council.

J. Everett Barr for Appellant.

Edmund G. Brown, Attorney General, Doris H. Maier and William O. Minor, Deputy Attorneys General, for Respondent.

PEEK, J.—This is an appeal by defendant from a judgment of conviction following a jury verdict finding him guilty of the crime of assault with a deadly weapon.

Shortly after midnight on June 3, 1957, the victim, Raul Perez, was in a bar at Weed, California. In the bar at the same time were the defendant and several other customers. As Perez was returning from the restroom, he heard the defendant say to a man sitting next to him, "You have to watch these Mexicans and Niggers, they all carry knives." Upon hearing this, Perez confronted the defendant, stating, "This is one Mexican you don't have to worry about. I don't carry a knife." Perez testified that as he said this he raised his hands. Defendant replied, "Don't hit me. I got a broken jaw." There was additional testimony concerning Perez's actions immediately before the assault; to wit, that he invited the defendant outside the bar, and that he raised his hands as if to strike him. Defendant then cut Perez with a knife, inflicting two wounds upon his stomach. Others at the bar forced defendant to drop the knife on the floor.

Defendant does not deny that he cut Perez but contends that he did so in self-defense. His first contention is that the court erred in allowing in evidence only the portions of the conversation previously quoted and in refusing defendant the right to put in evidence all of the conversation between defendant and the bar patrons. The record in this regard shows that during the course of defense counsel's opening statement, the court interrupted, the jury was excused and counsel requested to make an offer of proof. In substance the offer was that prior to the attack one of the persons in the group at the bar asked the defendant if he lived in that

vicinity, and he replied that he did. The person then asked concerning Perez who had just gone into the men's restroom, saying that he seemed to be belligerent and claimed that he had been a Golden Gloves fighter. The defendant replied that he didn't know anything about that and added, "Normally, I watch out for Mexicans and Niggers, because they carry knives." The quoted portion of the conversation was all that was heard by Perez. The court ruled that such evidence was inadmissible, and the trial continued. This court, in *People* v. *Yokum*, 145 Cal.App.2d 245, at page 259 [302 P.2d 406], quoted with approval the general rule expressed in 64 American Law Reports 1029, 1030:

"The rule is supported by many authorities that on a trial for homicide, or for an assault and battery, the defendant, after laying a proper foundation by evidence tending to show that, in committing the homicide or assault, he acted in self-defense, may introduce evidence of the turbulent and dangerous character of the deceased or party assaulted. . . . [T]he law recognizes the well-established fact in human experience that the known reputation or character of an assailant as to violence and turbulence has a very material bearing on the degree and nature of the apprehension of danger on the part of a person assaulted; . . ."

Necessarily, therefore, the court erred in refusing the evidence offered by the defendant since it tended to show the belligerent conduct of Perez and the apprehension of the danger on the part of defendant. The error in this regard looms larger when considered in relation to the People's instruction number 14, given by the court and read a second time when the jury returned and asked for further instructions on the question of self-defense, which is as follows:

"The law does not permit or justify one who intends to commit an assault upon another to design in advance his own defense by instigating a quarrel or a combat with a view thereby to create a situation wherein the infliction of the intended injury will appear to have been done in self-defense."

Had the court allowed the testimony, the jury could have inferred therefrom that by reason of Perez's belligerence and boastfulness concerning his prowess as a fighter, he could protect himself without a knife. But by the refusal of the proffered testimony, the defendant was placed in the position of having in effect instigated a quarrel.

It is defendant's further contention that the court also

erred in refusing his attempted impeachment of one of the witnesses for the prosecution. The testimony was that of one Helen Facey who testified at the trial that Perez had made no threats to defendant; that he did not raise his fists; that Perez told the defendant that he, Perez, did not want any trouble inside; and further that the defendant had offered her money to change her statement. The defendant offered to prove that the witness, on her own volition, had approached the defendant's father with an offer to leave the state if he would pay $100 to her. ■ ". . . [I]t is important that the jury should know whether a witness, after she has given her testimony in favor of one party, had at some previous time offered or agreed for a consideration to suppress the very testimony she has given; for, if she did, it would certainly throw discredit upon her testimony as given, in the same manner as would the fact that she had made different statements upon a former occasion." (*Barkly* v. *Copeland,* 86 Cal. 483, 487-488 [25 P. 1, 405].) ■ Here the witness Facey had testified to matters material to the issue of defendant's alleged self-defense. Defendant should have been permitted to place into evidence testimony by his father that the witness had approached him with a request for money. (See *People* v. *Alcalde*, 24 Cal.2d 177 [148 P.2d 627].)

In the event of a retrial, what we have heretofore said concerning the evidence offered by defendant but refused by the court, would appear to answer defendant's contentions relative to the instructions given by the trial court.

The judgment is reversed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied December 22, 1958, and respondent's petition for a hearing by the Supreme Court was denied January 21, 1959. Traynor, J., was of the opinion that the petition should be granted.