## Staunton.

### SAWYERS v. COMMONWEALTH.

September 17th, 1891.

1. CRIMINAL PROCEEDINGS—*Conclusion of argument.*—The trial court may, at its discretion, allow counsel employed by private parties to aid the prosecution, to close the argument before the jury; and its ruling is not subject to review except for abuse of discretion.

2. IDEM—*Remark of counsel—Code, § 3897.*—Remark of prosecuting attorney that "though he had no right to swear any man accused of crime, he had the right to prove his statements;"

HELD:

　　No violation of Code, § 3897.

3. IDEM—*Exclusion of impeaching testimony—Harmless error—Case at bar.*—In case here;

HELD:

　　That the evidence so clearly established defendant's guilt, that an erroneous ruling excluding evidence offered to impeach one of commonwealth's witnesses, was no ground for reversal.

Error to judgment of circuit court of Alleghany county, rendered March 27th, 1891, affirming judgment of county court of said county, rendered November 10th, 1890, sentencing John Sawyers, the plaintiff in error, to confinement in the penitentiary for three years, in accordance with the verdict of the jury at trial of an indictment against him for the felonious and malicious burning of a certain building in said county, and the property of one John W. Jennings. Opinion states the case.

*James Bowler* and *James Bumgardner*, *Jr.*, for plaintiff in error.

*Attorney-General R. Taylor Scott*, for commonwealth.

LEWIS, P., delivered the opinion of the court.

The first assignment of error that we will consider, raises the question whether or not the county court erred in permitting the argument before the jury to be concluded, against the prisoner's objection, by R. L. Parrish, an attorney employed by Jennings to aid the attorney for the commonwealth. It is contended that in a criminal prosecution, wherein counsel are employed by private parties to prosecute, the accused has the right to answer any argument that may be made to the jury by such counsel, and that it was error in the present case to permit the case before the jury to be concluded by Parrish. But we do not concur in this view. It was a matter to be determined by the trial court, in the exercise of a sound discretion, and there is nothing in the record to show that this discretion has been abused. *Hopper's Case*, 6 Gratt. 684; 3 Rob. (old) Pr. 227; 1 Bish. Crim. Proc. (third ed.), § 282.

The subject of the next assignment of error is a remark made by Parrish in the closing argument, which was as follows: "Although I have no right to swear any man who is accused of crime, I have the right to prove his statements." The prisoner objected to the remark at the time, as he does now, claiming that it was in violation of section 3897 of the Code, which provides that the failure of the accused to testify shall create no presumption against him, nor be the subject of any comment before the court or jury by the prosecuting attorney.

There was certainly no direct reference in the remark to the failure of the accused to testify, and it would be a strained and unwarranted construction to hold it to be an indirect or

implied comment on that subject. The objection is, therefore, not well taken. *Sutton's Case*, 85 Va. 128.

The next point is as to the exclusion of certain evidence at the trial. The commonwealth, to maintain the issue on her part, introduced a witness, Ledford Sawyers, who, on cross-examination, was asked by the prisoner whether, in a conversation, after the burning, with Mrs. Sawyers, he had not admitted that *he* did the burning, to which the witness, without objecting to the question, answered that he had had no such conversation. The prisoner then called Mrs. Sawyers as a witness, and asked her the following question: "Did or did not Ledford Sawyers, in a conversation with you, say that if you were true in your declaration that you would not tell, if you knew, who burned Jennings' house, he would tell you who did it, and did he not say, when you told him you were, ' Well, then, I will tell you; I did it' ? "—to which question the attorney for the commonwealth objected, and the objection was sustained.

It is contended that the question was relevant, and therefore admissible to impeach the credit of Ledford Sawyers as a witness. But be that as it may, it is clear from the evidence certified in the fourth bill of exceptions, which was taken to the refusal of the court to grant a new trial, that the jury could not have rightly found otherwise than that the prisoner was guilty, and hence, in any view, he has not been prejudiced by the ruling of the county court.

The established rule is that when the question in the appellate court is as to an erroneous ruling at the trial in admitting or excluding evidence, or in the giving or refusing an instruction, and the accused may have been prejudiced by such ruling, even though it be doubtful whether he was or not, the judgment will be reversed. But when from a survey of the whole record it is manifest that he has not been so prejudiced, the judgment will be affirmed, the rule in this respect being the same in criminal as in civil cases. *Payne's Case*, 31 Gratt. 855 ;

*Vaughan's Case*, 85 Va. 671; *Danville Bank* v. *Waddill*, 27 Gratt. 448.

In the present case the evidence is clear and satisfactory, leaving no room for a rational doubt as to the prisoner's guilt.

It was proved by Jennings, the owner of the building, that it was burned between 8 and 9 o'clock at night, on the 25th of April, 1888; that he lived about 400 yards from it, and passed near it on his way to supper, about thirty-five or forty minutes before the fire was discovered; that at that time there was no fire in or near it; that the building was a dwelling-house, but was not completed, and was unoccupied. When the fire was discovered, he says, the flames were bursting out at every opening, and the house appeared to have been set on fire in several places.

As tending to fix guilt upon the prisoner, it was further proven that he had long entertained feelings of hostility towards Jennings, originating in the fact that the farm upon which the house was built formerly belonged to the prisoner's father, and had been purchased by Jennings several years before the burning, at a judicial sale. Only a week before the burning, he (the prisoner) declared to one of the witnesses his intention to burn the house and to make Jennings a pauper. And several months previously he remarked to another witness, who mentioned that Jennings was building a new house, that if he built it, it would not stand twelve months. On two occasions, soon after the burning, when passing the standing chimneys, where the house had stood, he was seen to "hold up his hands and yell as if in delight;" and on another occasion he said to one of the witnesses that only a few persons knew he burnt the house, and they would not tell. He made substantially the same statement to another witness, at a different time, and he repeatedly threatened, before the burning, to make Jennings a pauper.

Among the chief *indiciae* which go to substantiate at once the *corpus delicti* and the guilt of the prisoner in a case like this,

say the authorities, are the circumstances that the fire broke out suddenly in an uninhabited house, or in different parts of the same building, and that the accused had a cause of ill will at the sufferer, or had been heard to threaten him. In the present case not only do all these circumstances concur, but others, as we have seen, were established, which make a clear case for the commonwealth—a case so strong and clear as to make it apparent that the jury could not have rightly found for the prisoner, had the court permitted the question propounded to Mrs. Sawyers, above quoted, to be answered, and the answer had been favorable to the prisoner, nor even if the testimony of the witness, Ledford Sawyers, had been discarded altogether.

It is true the bill of exceptions embodies only the evidence for the commonwealth, the court deeming it unnecessary, as the bill states, to certify the evidence introduced by the prisoner. But inasmuch as the court was not asked to certify the latter, and as no point was made either in the trial court or in the circuit court—nor has any been made in this court—as to the failure to certify it, the prisoner must be taken to have acquiesced in the view that it was not essential to his case in the appellate court. The judgment is therefore affirmed.

JUDGMENT AFFIRMED.