STATE OF IOWA V. FRANK MILLMEIER, Appellant.

**Corpus Delicti:** ARSON. The phrase *"corpus delicti"* includes two elements: *First*, that a certain result has been produced, as that a man has died, or a building has been burned or a piece of property is not in its owner's possession; *second*, that some one is criminally responsible for the result. Citing *Ruloff v. People*, 18 N. Y. 179; *People v. Bennett*, 49 N. Y. 137; *Winslow v. State*, 76 Ala. 42; *Pitts v. State*, 43 Miss. 472.

CIRCUMSTANTIAL EVIDENCE. Direct evidence is not indispensable to establish either of the elements of the *corpus delicti* in a criminal trial, but when circumstantial evidence is relied on it must be of the most cogent and irresistible kind.

ELEMENTS OF. In an arson case, to warrant conviction, there must be satisfactory proof that the building was feloniously and maliciously burned by some one and not accidentally burned.

RULE APPLIED. The existence of the *corpus delicti* may be found by the jury where the evidence showed that early in the evening of the night of the fire a rain storm commenced which changed to sleet and finally to snow; that defendant had been making threats against both his brother and H, owner and tenant, respectively; that he made contradictory statements as to his whereabouts on that evening; that he was last seen on such evening about 10 or 10:30 o'clock, in F; that the barn burned was between F and his house and he could pass it on going home without going far out of his way; that on the forenoon of the same day he passed the barn and remarked to a companion about it, and, in the same connection, said he was going to get even with the man who was using it; that as soon as the snow went off, which was within a week, footprints, similar in size and style to those made by defendant, were found leading from near the barn to or near the gate of defendant's premises; and that after defendant's preliminary examination he tried to intimidate some of the witnesses against him. Citing *Brooks v. State*, 51 Ga. 612; *Carlton v. People* (Ill.) 37 N. E. Rep. 244; *State v. Hallock* (Wis.) 26 N. W. Rep. 572; and *People v. Eaton* (Mich.) 26 N. W. Rep. 702.

**Evidence:** ARSON. On the trial of one charged with burning his barn which was in possession of defendant's brother as lessee, on November 24, a witness testified that in the previous Octobe· defendant told witness that he was going to get even with H and his brother. *Held*, that it was not error to overrule an objection to the question, "what, if anything, did he say about dynamite?" and permit the witness to testify that "he asked me to come out to his

place, and asked me if I understood the use of dynamite, and I told him that I did."

SAME. And it was not error to admit evidence that the defendant said he was going to get even with H and his brother, and that he would give witness twenty-five dollars, and all witness had to do was to touch a match.

· OPINION EVIDENCE. One witness testified that he had noticed certain peculiarities in defendant's footprints, that certain tracks leading from the railroad to the burned building, and in the direction of defendant's property, had the same peculiarities. Another testified that there was a similarity between the tracks described by the former witness and those made by defendant, and that he thought they were the same. *Held*, that such evidence was not objectionable because it consisted of the witnesses' opinion. Citing *Crums v. State* (Tex. App.) 13 S. W. Rep 868, and *State v. Ward*, 61 Vt. 153.

RELEVANCY. Evidence that on January 29, after the fire, witness heard defendant say to a companion that he was smart enough and sharp enough to cover up his tracks, and that when this blowed over he would open up the battle, was not admissible, when the witness gave only the one sentence, and did not pretend to know what the conversation was about, and there was nothing to show that the defendant's statements related either to the offense charged or to those whose property was burned.

EXCLUSION: *Harmless error.* The exclusion of the question to a witness for the state, if he did not understand that he was to be given his liberty after testifying in the case, if erroneous, is not prejudicial, where the witness in answer to questions which were not objected to, explained that he was held under bond to appear as a witness in the case, and being unable to furnish it, was committed to jail.

IMPEACHMENT. A witness cannot be impeached by cross-examination eliciting that he has been in jail a number of times in the county, and that he has had trouble with the officers.      ·

New Trial: MISCONDUCT OF COUNSEL. Defendant was not entitled to a new trial because the state's counsel, in his closing argument to the jury, said: "There are witnesses who know that this man was not at home that night (referring to defendant's wife). We could not use her; could not if we wanted to; it would be an impossibility. The law throws that shield and guard around her. We could not use her, nor the defense has not seen fit to use her." Nor because he also said that "defendant is not only charged with a crime, but he is guilty of it."

THREATS. In an arson case, threats made by accused against the person or property of the prosecutor may be shown, not only to

prove malice, but to connect the accused with the commission of the offense. Citing *People v. Eaton*, 59 Mich. 559, and *People v. Lablimore*, 86 Cal. 403.

*Appeal from Lee District Court.*—HON. HENRY BANK, Judge.

WEDNESDAY, OCTOBER 6, 1897.

DEFENDANT was indicted, tried and convicted of the crime of arson, and from the sentence imposed, appeals.—*Reversed.*

*Herminghauser & Herminghauser* and *W. W. Dodge* for appellant.

*Milton Remley*, attorney general, and *Jesse A. Miller* for the state.

DEEMER, J.—Defendant is accused of having, on November 24, 1895, burned a barn belonging to one William Hoenig,—but in the possession of George Millmeier, a half brother of defendant, as lessee, at the time it was destroyed. The conviction was obtained on circumstantial evidence, some of the material parts of which will be hereinafter referred to.

The court permitted a witness for the state to testify that he met defendant at a certain saloon in October, before the fire, and that defendant said he was going to get even with Hoenig and his brother, George Millmeier. This witness was then asked: "What, if anything, did he say about dynamite?" To this defendant's counsel objected, but the objection was overruled. Witness then said: "He asked me to come out to his place, and asked if I understood the use of dynamite, and I told him that I did." The objection to the question was properly overruled. Threats made by the accused against the person or property of one

whose property is burned, may be shown to prove the existence of malice, and to connect the accused with the commission of the crime. *People v. Eaton,* 59 Mich. 559 (26 N. W. Rep. 702); *People v. Lattimore,* 86 Cal. 403 (24 Pac. Rep. 1091). For aught that appeared when the objections were interposed, counsel were inquiring as to what was said about dynamite at the time the defendant made the threat against Henry Hoenig and his brother; and it was properly admitted as a part of that conversation, if for no other reason.

Another witness was permitted to testify, over defendant's objection, that defendant said "he was going to get even with Hoenig and George Millmeier, and that he (defendant) would give him (witness) $25, and said all he (witness) had to do was to touch a match." This evidence was clearly admissible.

On cross-examination of one of the state's witnesses, defendant offered to show that the witness had been in jail a number of times in the county, and that he had had trouble with the officers. Such evidence was clearly inadmissible, and properly rejected. This same witness was asked if he did not understand that he was to be given his liberty after testifying in the case. An objection to the question was sustained. It appears that this witness was held under bond to appear as a witness in the case, and, being unable to furnish it, was committed to jail. Under these circumstances, we doubt whether the question was a proper one; but if it was, the ruling was without prejudice, for the witness fully explained the matter in answer to questions which were not objected to.

Another witness for the state was permitted to testify that he had noticed certain characteristics and peculiarities in the footprints of defendant, and that certain tracks leading from the railroad to the burned

building, and in the direction of defendant's property, had the same characteristics and peculiarities as the tracks of defendant. Still another witness was permitted to state that there was similarity between the tracks or footprints above described and those made by defendant. The objection, as we understand it, is that these statements are merely the opinions of the witnesses, and therefore inadmissible. Identity of footprints, as well as of individuals, is, of necessity, generally a matter of opinion, and the courts almost universally hold that a witness may testify that, in his opinion, certain tracks found near a burned building were tracks made by a certain person. *Crumes v. State* (Tex. App.) 13 S. W. Rep. 868; *State v. Ward*, 61 Vt. 153 (17 Atl. Rep. 483). The witness who made the last statement testified, in effect, not only that there was a similarity in the tracks, but that they were the same, he thought. There was no error in these rulings.

A street car conductor was permitted to testify that on the evening of January 29, 1896, he heard defendant say to a companion that "he was smart enough and sharp enough to cover up his tracks, and that, when this blowed over, he would open up the battle." The objection to it was that it had no connection with the matter in controversy ; that it occurred after the commission of the crime, and was immaterial and irrelevant. The argument in support of the objection is somewhat broader, in that it claims that this was but an extract from a conversation, the remainder of which the witness did not hear. There is no foundation in the record for this latter claim. With reference to the objection which was in fact made, it appears to us that the evidence was improperly admitted. The witness did not pretend to know what the conversation was about. He gave but this

one sentence, and we are asked to infer or hold that the jury was authorized to infer that it related to the burning of the building. There is absolutely nothing to show that this conversation related to the burning of the barn, or that the threat contained in it had reference either to the owner or to the occupant of the building. It may as well have referred to any other circumstance or to any other trouble. Before allowing it to be received in evidence, the court should have required some kind of showing that it related either to the offense charged or to the persons whose property was burned. The evidence was clearly irrelevant and highly prejudicial, and should have been rejected.

II. Counsel for the state, in his closing address to the jury, said: "Defendant is not only charged of a crime, but he is guilty of it." He also said: "There are witnesses who know that this man was not at home that night [referring to defendant's wife]. We could not use her; could not if we wanted to; it would be an impossibility. The law throws that shield and guard around her. We could not use her, nor the defense has not seen fit to use her." Neither of these statements is sufficient to call for a new trial. State v. Beasley, 84 Iowa, 83; State v. Cater, 100 Iowa, 501; State v. Toombs, 79 Iowa, 741.

III. The only proof of the corpus delicti is that a barn belonging to Hoenig, and used by George Millmeier, was burned between 11 and 12 o'clock in the evening of November 24, 1895; that defendant, during a period covering two or more years, had made various threats against the owner and occupant; that, about a week after the fire, footprints similar in size and shape to his were found at or about the burned building, which led up to and in the immediate vicinity of his premises; and that he made various and contradictory statements as to his whereabouts on the

evening the barn was burned. Counsel do not agree as to what constitutes "*corpus delicti*," and we find that courts are as far apart as counsel in defining the term. The expression means, primarily, the "body of the offense." But, in applying it, courts and text writers have not at all times agreed as to what is meant by the "body of the offense." In our opinion, the term means, when applied to any particular offense, that the particular crime charged has actually been committed by some one. It is made up of two elements: *First*, that a certain result has been produced, as that a man has died, or a building has been burned, or a piece of property is not in the owner's possession; *second*, that some one is criminally responsible for the result. *Ruloff v. People*, 18 N. Y. 179; *People v. Bennett*, 49 N. Y. 137; *Winslow v. State*, 76 Ala. 42; *Pitts v. State*, 43 Miss. 472; *People v. Palmer*, 109 N. Y. 113 (16 N. E. Rep. 529). Applying this rule to an arson case, we held in *State v. Carroll*, 85 Iowa, 1, that there could be no conviction without satisfactory proof that the building was feloniously, wilfully, and maliciously burned by some one, and was not an accidental burning. Direct evidence to establish either of these elements is not required, but, where circumstantial evidence is relied upon, it must be of the most cogent and irresistible kind. *State v. Keeler*, 28 Iowa, 551.

In this case the burning of the barn is established by direct evidence, but there is no proof other than circumstantial that it was feloniously set on fire. The circumstances relied upon to prove that it was wilfully and maliciously burned, are, as a rule, those which tend to connect the defendant with the commission of the crime. That such circumstances may be considered in proving the *corpus delicti* seems to be well settled. *Carlton v. People*, 150 Ill. 181 (37 N. E. Rep. 244). These facts, then, with some others, appear

in evidence, which tend to prove that the building was fired by some one maliciously and feloniously. The building was uninhabited. It stood away from any building in which fire was used. A rainstorm commenced early in the evening of the night of the fire, which changed to sleet, and finally to snow. The defendant had been making threats against both the owner and occupant of the building, and was hostile to each of them. He made contradictory statements as to his whereabouts on the evening in question. He was last seen about ten or half-past ten o'clock in the evening of the day the fire occurred, in Ft. Madison. The barn in question was between Ft. Madison and his house, and he could pass it on returning home without going far out of his way. On the forenoon of the day of the fire, he passed the barn which was burned, and remarked to a companion about it, and in the same connection said he was going to get even with the man who was using it. As soon as the snow went off the ground, which was within a week following the fire, footprints similar in size and style to those made by defendant were found leading from near the barn to or near the gate leading to the defendant's premises. After the preliminary examination of defendant, he tried to intimidate and frighten some of the witnesses who had testified against him. These are the main circumstances relied upon by the state to prove that a crime was committed, and, in our opinion, they are sufficient; for, as said in the case of *Sawyers v. Commonwealth*, 88 Va. 556 (13 S. E. Rep. 708), at page 559, 88 Va., and page 709, 13 S. E. Rep. "Among the chief *indiciæ* which go to substantiate at once the *corpus delicti* and the guilt of the prisoner in a case like this, say the authorities, are the circumstances that the fire broke out suddenly in an uninhabited house, or in different parts of the same building, and that the accused had a cause of ill will

against the sufferer, or had been heard to threaten him." The cases of *Brooks v. State*, 51 Ga. 612; *Carlton v. People* (Ill. Sup.) 37 N. E. Rep. 244; *State v. Halleck* (Wis.) 26 N. W. Rep. 572; and *People v. Eaton* (Mich.) 26 N. W. Rep. 702,—are not stronger than the one at bar, and in each and every case a verdict of guilty was sustained.

IV. Some of the instructions are complained of. We have examined them all with care, and discover no error. As we have seen, threats made by the accused against the person or property of the prosecutor may be shown, not only to prove the existence of malice, but to connect the accused with the commission of the offense. See *People v. Eaton* and *People v. Lattimore, supra;* also, *State v. Day*, 79 Me. 120 (8 Atl. Rep. 544); *Bond v. Commonwealth*, 83 Va. 581 (3 S. E. Rep. 149). The court, in effect, so instructed the jury. It also instructed that they must find beyond all reasonable doubt that a crime was in fact committed. This covered the *corpus delicti*, and was sufficient. The court also fully instructed as to the law of circumstantial evidence, and the charge, as a whole, fully and fairly presented the law.

V. Appellant's counsel also argue that, conceding the *corpus delicti* to have been proven, there is not sufficient evidence to convict the defendant of the commission of the offense. As there is to be a re-trial of the case, it is better that we express no opinion upon this point. Some other errors are assigned, which need not be considered, as they will not arise upon a re-trial. For the error pointed out, the judgment is REVERSED.