## STATE v. BERGLAND.

1. On a trial for larceny of a steer, evidence that the owner, several months after the larceny, asked defendant how he liked "my beef," and he answered that it was good, is inadmissible, in the absence of evidence that he knew what was referred to or that he was suspected.

2. The evidence on a trial for larceny of a steer being circumstantial, error in allowing the owner to testify that he asked defendant how he liked his beef, and he answered that it was good, cannot be held harmless.

3. Question asked the owner of cattle on a trial for larceny of a steer, if, when he asked defendant a question, he had been informed that he had been butchering "your" cattle, is improper, as assuming that defendand had been butchering witness' cattle.

4. Testimony that witness had heard defendant had been doing some butchering is inadmissible on a trial for larceny of a steer.

(Opinion filed July 2. 1902.)

Error to circuit court, Lyman county. HON. FRANK SMITH, Judge.

Peter A. Bergland was convicted of grand larceny, and appeals.
Reversed.

*James Brown,* for plaintiff in error.

*John A. Bartine,* state's attorney of Lyman county, and *A. W.
Burtt,* attorney general, for the state.

CORSON, J.   Upon an information duly filed · by the state's at-
torney of Lyman county, charging the plaintiff in error with the
commission of the crime of grand larceny, by stealing one steer,
the property of Charles S. Jewell, he was convicted, and sentenced
to the state penitentiary for a period of three years.   A motion for a
new trial having been made and denied, the case comes before this
court for review on a writ of error.

On the trial the state introduced evidence tending to prove that
the hide of an animal having on it the brand of the prosecuting wit-
ness was found concealed or buried in the stable of the plaintiff in
error, and that in his house parts of quarters of beef were also
found, and that the prosecuting witness had lost certain animals
branded with his brand.   There was no direct evidence connecting
the plaintiff in error with the larceny of the steer described, the evi-
dence being such as is known in law as "circumstantial."   A number
of errors are assigned, but, in the view we take of the case, it will
only be necessary to consider the fourth, fifth and sixth, which are,
in substance, that the court erred in overruling the defendant's ob-
jection to the questions asked the witness Jewell as to a conversation
he had with the defendant with reference to the steer alleged to have
been stolen, and also in overruling defendant's objection to the ques-
tion asked the same witness as to whether or not he had been in-
formed from any source that the defendant had been butchering some
of his cattle.   The witness, Jewell, after describing his stock, brand,

etc., was asked the following question: "Had you at any time a conversation with the defendant with reference to the steer alleged to have been stolen?" to which he answered: "Not particularly that steer, no. Q. Well, with reference to steers that you had lost? A. "Yes.". He was then asked to "state that conversation, and when and where it occurred?" The question was objected to, and the objection overruled, and the witness answered: "It was some time last winter. I don't remember the exact date. It was in Kirby's saloon. I asked him how he liked my beef, and he said it was good." Defendant then moved the court to strike out the answer as incompetent, irrelevant, and immaterial, and as not having any connection with or reference to the offense charged in this case. The motion was denied, and the defendant excepted. He was then asked: "Was member." It is contended on the part of the defendant that the ad-that all the conversation?" to which he replied, "that was all I re-mission of this evidence was highly prejudical to the defendant, and was clearly inadmissible, as there is nothing showing or tending to show what the witness referred to when he asked him, "How do you like my beef?" or, as used in another place, "our beef?" The apparent purpose of this testimony was to show an admission on the part of the defendant that he had been, in some form, using the beef of the complaining witness; and this is quite evident from the question asked on the redirect examination—if the witness at the time had been informed from any source that the defendant had been butchering his cattle. The question was clearly inadmissible, and the objection of the defendant's counsel should have been sustained. The conversation claimed to have taken place was several months after the alleged larceny had been committed, and there was no evidence tending to show that the defendant understood what the complaining witness referred to when he spoke of "my beef" or "our

beef." This evidence, therefore, being calculated to mislead the jury, or prejudice them against the defendant, should not have been admitted. The court by its ruling told the jury, in effect, that they might consider this evidence as tending to prove an admission by defendant that he was connected with the larceny. In State v. Millmeir, 102 Iowa, 692, 72 N. W. 275, the judgment of the court below was reversed for the admission of evidence by the court that the defendant had said "he was smart enough and sharp enough to cover up his tracks, and that when this blowed over he would open up the battle." The court, in its opinion, says that the evidence was improperly admitted; that "the witness did not pretend to know what the conversation was about. He gave but this one sentence, and we are asked to infer or hold that the jury in the trial below was authorized to infer that it related to the burning of the building. There is absolutely nothing to show that this conversation related to the burning of the barn, or that the threat contained in it had reference either to the owner or to the occupant of the building. It may as well have referred to any other circumstance or any other trouble. Before allowing it to be received in evidence, the court should have required some kind of showing that it related either to the offense charged, or the persons whose property was burned." So we may say in reference to the case at bar there should have been some evidence indicating that the defendant had reference to the larceny of the steer. At the time there was nothing to show that he was charged with the commission of the offense, or that he had any knowledge that he was in any manner suspected of its commission; and the question, "How do you like my beef?" is susceptible of many meanings in a range country. As above stated, the evidence in the case was circumstantial, there being no direct evidence of the commission of the offense by the defend-

ant; and it is impossible, therefore, for this court to say that the jury were not influenced in finding their verdict by the evidence so improperly admitted.

The witness was asked on the redirect examination the following question: "At the time you asked the defendant how he liked our beef, had you been informed from any source that he had been butchering some of your cattle?" The question was objected to and the objection overruled, and he answered: "Nobody had ever told me right out. I had heard that he had been doing some butchering." This question asked the witness was clearly improper, and the objection to it should have been sustained. By the question the state's attorney seemed to assume that the defendant had been butchering cattle owned by the witness, and simply asked if he had been informed of that fact. The answer was objectionable, and was clearly prejudicial to the defendant. What the witness had heard as to the defendant doing some butchering should not have been admitted as evidence in the case.

These views lead to the reversal of the judgment of the court below, and the same is reversed, and a new trial granted.