# STATE v. MONS JACOBSON.[1]

### July 16, 1915.

### Nos. 19,190—(9).

**Arson — evidence insufficient to convict.**

The evidence examined and *held* not sufficient to prove defendant guilty beyond a reasonable doubt.

Defendant was indicted by the grand jury for the crime of arson in the second degree, tried in the district court for Otter Tail county before Parsons, J., and a jury, and convicted. From an order denying his motion for a new trial, defendant appealed. Reversed.

*N. F. Field* and *Haupt & Busch,* for appellant.

*Lyndon A. Smith,* Attorney General, *John C. Nethaway,* Assistant Attorney General, and *Anton Thompson,* County Attorney, for respondent.

HOLT, J.

The defendant, Mons Jacobson, having been convicted of arson, appeals from the order denying his motion for a new trial. The record discloses no error of law. The charge is clear, terse and adequate. The only question is the sufficiency of the evidence, wholly circumstantial both as to the *corpus delicti* and defendant's guilt.

Fred Harthun owns a farm in the town of Dora, Otter Tail county, upon which he has resided many years. His barn was some 220 feet northwesterly from a public highway. The residence was between the barn and the highway. The general direction of this highway was north and south, but, on account of a lake, it was diverted in a southwesterly direction as it passed Harthun's house and barn.

[1] Reported in 153 N. W. 845.

Note.—Generally as to proof of *corpus delicti* in criminal cases, see note in 68 L.R.A. 33.

As to *corpus delicti* in arson, see note in 16 L.R.A.(N.S.) 285.

On Friday evening of April 17, 1914, Harthun and his wife attended to the stock, consisting of many horses and cattle, stabled in the basement of the barn. He closed the doors, and, because of an approaching storm, took particular notice that the large sliding door, above the basement upon the west side, and through which hayloads were driven into the barn, was shut. During the night after the Harthuns retired, it rained. About 3 a. m. of the eighteenth, the Harthuns were awakened by the glare from the burning barn. Nothing could then be done to save the imprisoned animals, the whole barn being enveloped in flames. However, the Harthuns testify they noticed that the large door mentioned was slid back some two feet. Some relatives and neighbors were sent for to help protect the house. It appears that those assembled concluded the fire to have been set, and Jacobson the incendiary. As soon as daylight permitted, seven persons, Harthun, his four sons and two neighbors, started to look for tracks. They claim they found tracks of smooth rubber shoes on the highway southwest from the barn, also kinks in the hog fence between the road and barn indicating a person had stepped on it in going over. It is said these tracks led north on the highway to this hog fence and also south from it, that some distance south the track going in one direction turned into a plowed field along a dead-furrow paralleling the highway. This plowed field was upon defendant's land, and the state offered evidence that along this dead-furrow a disc harrow had been run between the time of the fire and the following Monday. It was further claimed that, when these parties followed the tracks south, they led in from the highway towards Jacobson's house, which is located about a mile south of Harthun's home and could be traced to within 6 rods of the dwelling; that as Jacobson, who was feeding his stock, noticed them, he hurried or ran to the house and did not again come out. None in the party went up to the house, or made any attempt to speak to him. Harthun and the men with him testified that the rain during the night had obliterated any previous tracks and hence, where the ground was favorable, the fresh tracks mentioned were easily discernible. One of the party traced one footprint upon a paper. On April 23 Jacobson was arrested. In addition to farming, Jacobson conducted, or rather

had conducted, a small store of general merchandise in one part of his dwelling. In the stock were shoes and rubbers, and several old rubbers were produced at the time of the arrest, and a search made for others. The constable who made the arrest testified one rubber was found which seemed to fit the tracing. This and two other rubbers, or shoes, were taken away by the state fire marshal who accompanied the constable. A motive for the crime was sought in a threat made by Jacobson a year provious that he would get even with Harthun in some way, or "pound hell out of him." Also, that on one occasion, more than a year before the fire, Jacobson drove from his meadow some trespassing cows of Harthun's, which when so driven out went into Harthun's cornfield, and one or two died from overeating.

We entertain no doubt but that circumstantial evidence alone may sufficiently establish the *corpus delicti* and the guilt of the accused in an arson conviction. The only question is whether the circumstances here adduced prove, beyond a reasonable doubt, the fire to have been incendiary and the accused the author thereof.

On the question of *corpus delicti,* it is true that Harthun claims the large door on the west side which was closed in the evening, was found at the time of the fire pushed back on its rollers about two feet, permitting the inference that some one had entered and set the fire. But when he thus noticed the door the fire had raged for some time, and it is not impossible that the movement of the door might be ascribed to the draft created by the flames or to the expansion of the roller rails from the heat. Another circumstance that tends to raise a doubt as to the *corpus delicti* is this: Harthun testified a storm was brewing when he left the barn in the evening, and for that reason he was careful to see that the large west door, from which direction the storm was approaching, was closed. He and others testified to a rain during the night. While rains are not usually accompanied by electrical disturbances at that season of the year, we know that sometimes even earlier lightning does set fire to buildings. The evidence is silent as to the absence or presence of electrical manifestations at this particular rain storm. If it was as effective in obliterating tracks as claimed, and of short duration,

we might expect it to have been an electrical storm. We think the circumstances showing the fire one of incendiary origin weaker in this case than in the following cases cited and relied on by the state: State v. Millmeier, 102 Iowa, 692, 72 N. W. 275; Sawyers v. Commonwealth, 88 Va. 356, 13 S. E. 708; Carlton v. People, 150 Ill. 181, 37 N. E. 244, 41 Am. St. 346; Winslow v. State, 76 Ala. 42; Davis v. State, 141 Ala. 62, 37 South. 676. In some of these stress is laid upon other cogent circumstances, such as confessions of guilt.

To deliberately set fire to a barn known to contain a number of domestic animals is such a dastardly act that we can scarcely believe any one guilty thereof, unless mentally unbalanced or driven by the strongest motive of vindictive revenge. There is no suggestion in the record of any mental deficiency or unsoundness in Jacobson's makeup. And we fail to find any apparently adequate motive either of revenge or otherwise, which could have impelled Jacobson to the crime. True, trespassing animals had caused some ill feeling between the two neighbors. But during more than a year preceding the fire the animals had caused no trouble. Jacobson and Harthun had been neighbors for over 25 years. There had been no open rupture between them, not even quarrels as far as the evidence indicates. The only thing is that about a year before the fire Jacobson lost a lawsuit he had brought against Harthun for alleged damage done by the latter's cows. Soon after the decision of the case, in a casual conversation with his tenants, Jacobson made the statement that he would get even, and at another time that he would thrash Harthun. Statements casually made, while smarting under a recent adverse decision of a lawsuit, are generally of no significance. There is no evidence that Jacobson ever again referred to the matter.

The proof of the incendiary origin of the fire being not very persuasive, and the existence of a motive in the mind of the accused extremely doubtful, we turn to some of the rather weak links in the evidence tending to fasten the alleged crime upon him. As above stated a paper tracing of the footprint of the supposed perpetrator of the crime was made. The constable testified one rubber in the collection found in Jacobson's house matched the tracing. This

Jacobson denied. The state fire marshal was at the trial. He was not called to corroborate the constable, nor to account for the non-production of this rubber taken away by him. Footprints may be convincing evidence, but, to be such, the footprint must be shown to correspond with the foot or footwear of the accused. The evidence of tracks here is of more probative force than in the case of State v. McLarne, 128 Minn. 163, 150 N. W. 787, in that they could be followed for a greater distance, and led nearer to defendant's home, but as to being identified as made by him we think it no more satisfactory. State v. Melick, 65 Iowa, 614, 22 N. W. 895; Kinnan v. State, 86 Neb. 234, 125 N. W. 594, 27 L.R.A.(N.S.) 478, 21 Ann. Cas. 335. Some courts have gone to great lengths in disparaging evidence of tracks to fasten guilt upon a person. Cummings v. State, 110 Ga. 293, 35 S. E. 117. We may also state that in one respect the evidence in this case is weaker than it was against Mc-Larne. There, there was an alleged confession; here, the defendant at no time admitted guilt.

The discing of the dead-furrow is made much of by the state. Although this was alongside much traveled public highways, no one saw the discing done. Jacobson maintained it was done a few days before the fire and at the same time that he disced around some low places in the field. When arrested he requested the fire marshal to go with him to verify his claim in regard to the discing, but he says the marshal refused. No great importance can be attached to the discing at that time of the year, when the ground was usually worked in that manner.

Mons Jacobson was 60 years of age at the time of the fire. Thirty-seven years he had lived where arrested. During that time he had had no trouble worthy of mention, except, he says, Harthun's cattle had occasionally trespassed. Jacobson has never married, and usually lives alone. For that reason he was under the misfortune of being unable to prove by other testimony than his own that he was at home during the night of the fire. He seems to be somewhat of a recluse, finding his sole enjoyment in books, and having, for a farmer, quite a library. There is nothing in his history or manner of life to suggest that he would perpetrate the despicable crime of which

he is accused. His apparently frank and candid story denying guilt was not shaken by the very skilful, searching, and, at times, almost uncanny, cross-examination of the attorney who assisted the county attorney. The perusal of the record has impressed the minds of nearly every member of this court with a strong doubt of Jacobson's guilt. We are not given to reverse a criminal conviction for technical errors where the record plainly reveals guilt. State v. Nelson, 91 Minn. 143, 97 N. W. 652. A just corollary of this rule requires the court, when strongly impressed with a grave doubt concerning the defendant's guilt, to grant him a new trial, notwithstanding the record is free from technical error.

The order is reversed and a new trial granted.

HALLAM, J. (concurring in result).

In my opinion the evidence is sufficient to sustain a finding that the fire was of incendiary origin. I find in the record no evidence of lightning or other natural causes for the fire. The heavy twelve-foot barn doors sliding on rollers were "shut and in good order" at 9 p. m. when the family went to bed. When the fire was discovered, at about 3 a. m., they were open "just so a man could get through." It does not appear to me that either wind or fire could roll back a twelve-foot sliding door in this manner. This and other circumstances of less importance seem to me to point clearly to incendiary fire.

I concur in the opinion that the evidence is insufficient to make proof beyond a reasonable doubt that defendant committed the crime. The only substantial evidence pointing to defendant as the guilty party is the existence of footprints, showing that some person passed both ways between the barn and defendant's residence. A paper tracing was made of these footprints. One witness testified that a rubber shoe was found in defendant's possession which seemed to fit the tracing. The fact is, however, that the shoe to which this witness referred was in possession of the state at the time of the trial but was not produced on the trial. Its nonproduction it seems to me almost compels the inference that it would not fit the tracing, and leaves very little force to the evidence of footprints.

The evidence of guilt is, in my opinion, much weaker than that in State v. McLarne, 128 Minn. 163, 150 N. W. 787.