RICHARDSON, Plaintiff in error, vs. THE STATE, Defendant in error.

*March 13—April 6, 1920.*

*Fires: Incendiary origin: Trial: Evidence: Sufficiency.*

The evidence in this case is *held* sufficient to sustain the conviction of the defendant on a charge of setting fire to and burning a quantity of lumber covered by insurance.

ERROR to review a judgment of the circuit court for Buffalo county: GEORGE THOMPSON, Circuit Judge. *Affirmed.*

The plaintiff in error, hereinafter called the defendant, was charged with having set fire to and burned a quantity of lumber, the property of one Mike Drier, on October 24, 1916. Drier was charged with being a co-conspirator in the crime.

The information charges that the lumber so alleged to have been burned was insured against loss or damage by fire in the Concordia Fire Insurance Company of Milwaukee, Wisconsin, the Security Insurance Company of New Haven, Connecticut, and the Royal Insurance Exchange of London; and that the lumber was burned with the intention of injuring the aforesaid insurers.

The defendant pleaded not guilty. He was convicted after a jury trial and was sentenced to a term of three years in the state prison.

For the plaintiff in error there was a brief by *S. G. Gilman* of Madison and *C. A. Ingram* of Durand, and oral argument by *Mr. Ingram.*

For the defendant in error there was a brief by the *Attorney General* and *John F. Baker,* assistant attorney general, and oral argument by *Mr. Baker.*

SIEBECKER, J. It is contended that the evidence fails to establish the criminal agency of the alleged burning of the lumber and mill in question. This claim is made on the ground that there are no facts or circumstances corrobora-

tive of the confession defendant made to the deputy fire marshal. The confession is in substance that defendant, at the instigation and request of Mike Drier, the owner of the property burned by the fire, was driven from the place where he was working for Drier on the day preceding the night of the fire; that Drier told him that part of the lumber had burned the previous night and that he wanted defendant to set fire to the mill and lumber and finish the work; that Drier drove with defendant to the yard, provided bottles of kerosene, placed them in the sawdust of the mill in defendant's presence, and told defendant how and where to apply the kerosene in the mill and on the lumber piles to set the fire; that defendant and his son slept in a shanty near the yard; that while the son slept the defendant arose about midnight, went to the mill, applied the kerosene as directed by Drier to the sawdust in the mill and the lumber piles, and set fire to the lumber and the mill; that the mill and all the lumber excepting one pile were consumed by the fire.

It appears that Drier did send for defendant and take him to the lumber yard, as stated in the confession, that he refused the offer of one Brumner, together with two other men in Drier's employ living near the yard, on the day before the fire to watch at the yard and protect it against fire, saying he would secure a man near Durand to do this, and that he secured and brought defendant to the yards. The defendant states that Drier told him to remove the bolt of the pump handle and that he did this, so that no water could be secured to extinguish the fire. The evidence tends to show that the bolt was so removed. It also appears that the fires at the mill and at the lumber yards were separate fires, and that the fires of the previous night had been completely extinguished. These and other facts and circumstances adduced in evidence clearly tend to show that the fires on the night in question were not accidental but were of incendiary origin and are sufficient to sustain a finding to that effect in connection with defendant's confession.

*State v. Jacobson,* 130 Minn. 347, 153 N. W. 845; *State v. Brown* (103 S. C. 437) L. R. A. 1916D, 1299.

The evidence is well nigh conclusive connecting the defendant with this fire.

Several exceptions are urged to the remarks of counsel for the state in addressing the jury. We have examined these remarks and the court's rulings thereon. They disclose that the remarks pertained to evidentiary matters, and that in their nature they did not naturally tend to prejudice the jury, who had heard and seen the witnesses on the stand while testifying. We find no reversible error in the record.

*By the Court.*—The judgment appealed from is affirmed.