STATE OF IOWA, Appellee, v. JAMES THOMAS TOWNSEND, Appellant.

**HOMICIDE:** **Evidence—Identity of Deceased.** Proof that a dead
1    body was the body of the person alleged to have been feloniously killed, may be established by other than direct and positive testimony. So held where the identity was established by the similarity of physical characteristics and other attending circumstances.

CRIMINAL LAW: Confessions—Threats and Fear. Statements to
2  an accused by a police officer to the effect that he was going
to the bottom of the facts surrounding a homicide, even if he
had to call every member of the family, and that the accused
was not telling the truth to the officer, and other facts, reviewed,
and held to present a jury question on the issue whether a confes-
sion was voluntary.

CRIMINAL LAW: Evidence—Fabrication. Record of an attempt by
3  an accused to fabricate evidence in his behalf reviewed, and held,
with other and attending circumstances, to fully justify the verdict
of guilt.

CRIMINAL LAW: Misconduct of Counsel—Persisting in Misconduct.
4  Record relative to persistence on the part of counsel for the State
in attempting to draw improper testimony from a witness reviewed,
and held not to constitute reversible error.

*Appeal from Dubuque District Court.*—J. W. KINTZINGER,
Judge.

APRIL 6, 1921.

DEFENDANT was convicted of the crime of murder in the
first degree, and sentenced to life imprisonment in the state
penitentiary at Fort Madison. From this judgment he appeals.
—*Affirmed.*

*Fabian Beckett,* for appellant.

*B. J. Gibson,* Attorney General, and *B. J. Flick,* Assistant
Attorney General, for appellee.

STEVENS, J.—I. Defendant was convicted of killing Frank
Crees, his stepfather. The conceded facts are that Frank Crees
lived in a boathouse on the Mississippi River, in the city of
Dubuque, with his wife and several children. The defendant,
who was the son of Mrs. Clara Crees by a former marriage, went
to Dubuque, after his discharge from the army, and resided
with the Crees family until the night of August 17, 1919, when
the boathouse was destroyed by fire. Frank Crees was one of
the employees of the Chicago, Milwaukee & St. Paul Railway

Company, and was last seen alive by anyone outside of the Crees family on the evening of August 14th, with his wife and children bathing in the river. His disappearance was observed shortly thereafter, and on Sunday morning following, the boathouse was totally destroyed by fire, leaving the Crees family destitute of money or clothing, except that worn by them at the time of the fire. The defendant and his mother stated that Crees had gone to Cincinnati, to look after some property in which he had an interest; that he would then go to Clinton; and that the family intended to float down the river to that place and meet him. On the evening of August 20th, some parties on the river observed an object afloat on the surface, a short distance from them, which they thought was a human body. They rode out to the object, and discovered that it was the body of a man. They tied a rope around the arm and towed the body to the shore. When it was removed from the water, it was found that a rope was wrapped around the body several times, and also around the neck, and that a rock weighing about 100 pounds was attached thereto. The ankles were also tied together. The body, which was in an advanced stage of decomposition, was clothed in a shirt only. After the body was taken to the undertaker's, it was discovered that the skull was fractured in two places, either of the wounds being sufficient to have produced death. No one was called to identify the body. One witness testified that he had frequently seen the man in Dubuque, but did not know his name. The skin was badly discolored, and showed a tendency to slip from the flesh. Suspicion had already been aroused against the defendant, and, on August 20th, he was taken in custody by the sheriff, and, in the presence of Catherine Hibbe and the county attorney, signed a written statement, confessing that he killed Crees on the morning of August 15th, with a window weight, by striking him several times upon the head; that he tied a rope around his feet and neck; that he rowed the body out into the river, and attached a rock weighing about 100 pounds to the rope, and sunk the body in the river. No testimony was offered upon the trial on behalf of the defendant.

The first contention of counsel for appellant is that the *corpus delicti* was not proven. Frank Crees, according to the

testimony, was about six feet tall, and had sandy hair and mus-

tache. Numerous witnesses testified that he did
not wear a beard, but was usually unshaven. The
testimony varies considerably as to his weight.

1. HOMICIDE: evi-
dence: identity
of deceased.

The body taken from the river was decomposed and bloated to such an extent that it was difficult to estimate his weight. The description, however, corresponded in all substantial respects with the descriptions given of Crees. Two or three witnesses who resided near the boathouse testified that they heard noises therein, about 2 o'clock on the morning of August 15th, and one witness testified that she heard a sound like someone falling on the floor. Another witness testified that he heard someone rowing a boat, shortly after he heard the noise.

Nothing appears to have been heard of Crees, nor was any testimony offered upon the trial to the effect that he had gone to Cincinnati, as claimed by the defendant and his mother. The *corpus delicti* may be established by circumstantial evidence. *State v. Millmeier*, 102 Iowa 692. While identification of the body by witnesses who knew Crees during his lifetime was not introduced, the circumstances shown fully justified the jury in finding that the body was that of Frank Crees. The evidence abundantly justifies the conclusion that he was murdered.

II. Objection was lodged against the admission of the alleged confession in evidence, upon the ground that it was obtained by threats and intimidation, and that it was not the

free and voluntary statement of the accused.
The confession was first made to Giellis, chief
of police of the city of Dubuque. Giellis testi-

2. CRIMINAL LAW:
confessions:
threats and fear.

fied that he first talked with the defendant on August 17th, at the matron's quarters, and that the defendant then said that Crees had gone to Cincinnati. Another conversation was had with him on August 19th, concerning the disappearance of Crees. After the defendant was taken to the police station on the 20th, the chief of police interrogated him at some length, and in the course of the conversation said to him:

"I told him that I intended to go into this matter to the bottom; that I would sift it out. There were many other members of the family who would be able to throw some light on

this matter, I was sure, before I finished my investigation; and I would continue to investigate the case if I had to bring up the entire family and question each and every one of them separately. I was positive I would get the facts. He said, 'What are you driving at? What do you mean?' I said, 'You needn't ask that question of me; you know down in your heart what I mean. You know what you are up here for, and you know why I am questioning you. And you know that you have not told me the truth.' ''

This is the language which counsel for the defendant construes as a threat. It was during this conversation that the defendant confessed, saying, ''Yes, I do know something about the death of Crees. I might as well come out with it.'' Later, the county attorney, in the presence of the chief of police and the police matron, wrote the statement which was signed by the defendant. This statement recites that it ''is voluntary, without threats, promise, or inducement of any kind.'' Both the chief of police and the police matron testified that the statement was read over to him, and that he signed the same freely, and that nothing was done by any of the parties present to induce him to do so.

The court submitted the question to the jury by instructions to which no exception was taken. The chief of police testified that he used no persuasion, promises, or other inducements to obtain the confession. The court could not have found, as a matter of law, that the confession was improperly obtained, and this question was, therefore, properly submitted to the jury. *State v. Bennett,* 143 Iowa 214. The confession was properly received in evidence.

III. One McCarthy testified that the defendant told him that he killed Crees with a window weight on Friday night; that these statements were made by the defendant voluntarily, and without threats or promises of any kind. The court properly overruled defendant's objections to the testimony of this witness, which were based upon the same grounds as the objections to the testimony of the chief of police.

IV. A motion was made by defendant, at the close of the testimony, for a directed verdict. The motion was properly overruled. The evidence of defendant's guilt does not rest

3. Criminal law: evidence: fabrication. alone upon his confession. As already stated, something occurred at the boathouse occupied by the Crees family, on the morning of August 15th, which aroused some of the neighbors, from whose testimony it appears that loud talking was heard, and a noise as of something falling, and of a boat being rowed upon the river. The disappearance of Crees was sudden, and it is manifest that the explanation given by the defendant thereof was untrue. While in jail, awaiting trial, the defendant, under an assumed name, wrote the following letter to his mother, and gave it to a fellow prisoner to mail. The prisoner gave the letter to the sheriff. It is as follows:

"October 7th, 1919.

"Mrs. Clare Crees, Dear M. Frend. Here is some good advice to you. Swear that James Killed Frank in defense. Say that he had that big English knife in his hand, atrying to cut the underclothes off the girls. Say that James dragged Frank back from the girls and Frank hit James with the knife. Say James hit him with the iron weight which was on the floor. Say you saw the knife in his hand. The rest after that the same as before. As much as you remember. Learn by heart.

"[Signed]   Mathew F. Marsun.

"(Give the sign if you get this letter.)"

The letter was never received by his mother, and she did not testify as a witness. Death was caused by blows upon the head with a blunt instrument, and the manner in which the body was placed in the river leaves no doubt that Crees was murdered. The evidence fully and abundantly sustains the verdict.

V.   Complaint is also made of the conduct of counsel for the State in argument to the jury. These assignments are without merit. It is also urged that counsel was guilty of misconduct in the examination of a witness by the name of Ida Mund. An attorney for the State persisted in interrogating this witness as to certain relations between defendant and Crees' daughters, after the court had sustained the defendant's objections thereto. Counsel should have promptly desisted

4. Criminal law: misconduct of counsel: persisting in misconduct.

from the line of examination pursued, immediately after the court ruled that the testimony was inadmissible. Counsel for the State explained their position by saying that they sought to establish a motive for the crime. The evidence did not tend to this end, but we are clear that no prejudice resulted. The facts of this case readily distinguish it from *State v. Weaver*, 182 Iowa 921, cited by defendant. In the *Weaver* case, the examiner sought to show that the defendant had committed other like offenses on other girls.

VI. Complaint is also made of the refusal of the court to give a requested instruction. No exception was taken to the refusal of the court to give this instruction, and its substance was embodied in a separate paragraph of the court's charge to the jury. Some other alleged errors are discussed by counsel, but they are without substantial merit. We have read the entire record with care, and are satisfied that the verdict of the jury was right, and that no prejudicial error was committed by the court. It follows that the judgment below is—*Affirmed.*

EVANS, C. J., ARTHUR and FAVILLE, JJ., concur.