STATE OF IOWA, Appellee, v. LEONARD CRISTANI, Appellant.

ARSON: Failure to Prove Corpus Delicti. The *corpus delicti* in arson—
a felonious, willful, and malicious burning—may not be established

from any combination of circumstances which may reasonably be reconciled with the theory that the fire was not of felonious origin.

**CRIMINAL LAW:** Motive. Proof of motive is not proof of *corpus*
2 *delicti.*

*Appeal from Warren District Court.*—L. N. HAYS, Judge.

NOVEMBER 22, 1921.

THE defendant was convicted upon an indictment charging him with the crime of arson, and appeals.—*Reversed.*

*Clarke & Cosson* and *W. H. Berry,* for appellant.

*Ben J. Gibson,* Attorney General, and *B. J. Flick,* Assistant Attorney General, for appellee.

WEAVER, J.—The defendant owned and operated a cheese factory at Norwalk, a small town within a few miles of the city of Des Moines. On the night of July 21, 1920, the factory, with its equipment and contents, was destroyed by 1. ARSON: fail- fire. Thereafter, an indictment was returned ure to prove *corpus delicti.* by the grand jury, charging the defendant with having feloniously caused said fire, with intent thereby to injure the insurance company or association which had issued him a policy of insurance upon the property so destroyed. To this accusation the defendant entered a plea of not guilty. There was a trial to a jury. At the close of the evidence in chief on part of the State, defendant moved the court for a directed verdict of not guilty. The motion was denied, and being renewed at the close of all the evidence, was again denied. The jury returned a verdict of guilty, and defendant's motion for new trial was overruled. From the judgment entered on the verdict, defendant appeals.

I. The first proposition argued for appellant is that the evidence is insufficient to sustain a conviction, and that the motion for a directed verdict of not guilty should have been sustained. A careful reading of the record convinces us that this objection is well taken. It is an elementary proposition of criminal law that, to be entitled to a conviction, the State must first

establish the *corpus delicti*,—the fact that a crime such as alleged has been committed by someone. This being established, the guilty connection of the accused with such offense must also be established, both beyond a reasonable doubt. As stated by this court in *State v. Millmeier*, 102 Iowa 692, 698, this rule, as applied to a charge of arson, requires "satisfactory proof that the building was feloniously, willfully, and maliciously burned by someone, and was not an accidental burning. Direct evidence to establish either of these elements is not required; but, where circumstantial evidence is relied upon, it must be of the most cogent and irresistible kind."

The mere fact that the building was burned and that its origin is unknown or involved in mystery, is not evidence that it was feloniously ignited. In addition to the fact of the destruction of the building by fire, it must appear by the evidence beyond a reasonable doubt that the fire was caused by the willful act of some person criminally responsible for it. See *State v. Millmeier*, supra; *State v. Pienick*, 46 Wash. 522 (90 Pac. 645); *State v. Carroll*, 85 Iowa 1. In the absence of such proof, the presumption obtains that the fire was accidental, or at least that it was not of criminal origin. *State v. Jones*, 106 Mo. 302; 4 Elliott on Evidence, Section 2807; *State v. Albert*, 176 Iowa 164; *Phillips v. State*, 29 Ga. 105; *Boatwright v. State*, 103 Ga., 430; *State v. Ruckman*, 253 Mo. 487. It is true, of course, as argued by the State, that the *corpus delicti* may be established by circumstantial evidence, but this does not make it the subject of mere conjecture or of doubtful inference, nor is it to be found from any combination of circumstances which may reasonably be reconciled with the theory that the fire was not of a felonious origin. Nor is it sufficient if the circumstances relied upon in support of the charge are such as excite suspicion only, but fall short of proof. *State v. Vandewater*, (Iowa) 176 N. W. 883 (not officially reported); *Bruno v. State*, 171 Wis. 490 (177 N. W. 610); *State v. Korth*, 39 S. D. 365 (164 N. W. 93). In the *Vandewater* case, which in most of its features is quite like the one now before us, we said:

"The most that can be said for the testimony of the State is that it creates a suspicion of the guilt of the defendant, and it goes without saying that mere suspicion is not sufficient.

There must be substantive proof of guilt—some fact proven which tends to establish the substantive fact upon which the State relies for conviction. All men are presumed to be honest and innocent; and where facts and circumstances are relied upon to prove guilt, they, when established, must negative every other rational hypothesis except the guilt of the defendant, and must be inconsistent with any rational hypothesis of innocence."

In the *Bruno* case, presenting a materially stronger combination of circumstances unfavorable to the accused, the Wisconsin court, reversing a judgment of conviction, says:

"Loath as this court has always been and still is to set aside a judgment based upon a verdict of guilty by a jury, and which has passed the careful consideration of a trial court, we. are nevertheless compelled, in a case such as this, involving a crime of such a grave nature, and in which the verdict of guilty by the jury was followed by punishment measured by a sentence of 10 years' imprisonment in the state prison, to feel the necessity of bearing steadfastly in mind the well established rule of law that no person shall be convicted of a penal offense unless the testimony be such as will sustain the rigid test of satisfying beyond a reasonable doubt.   *   *   *   The testimony in this case, in our judgment, when reasonably and fairly construed, creates no more than a suspicion that the defendant committed this offense. A suspicion merely is insufficient to support a judgment of conviction. *Lonergan v. State,* 111 Wis. 453, 460 (87 N. W. 455)."

The authorities to the foregoing effect are very numerous, but the citations made are sufficient to indicate the settled rule.

We shall not attempt to discuss the evidence in this case in full detail. No witness pretends to have seen the fire started, or to have any knowledge of its origin. It appears to have been first discovered about midnight of the day in question, and to have begun in an annex or "lean-to" attached to the main building. In this annex was located the heating apparatus used in the manufacture of cheese in the main building. As we understand the record, the fuel employed was oil or kerosene. There appears to be no satisfactory showing as to when the heating apparatus was last used. Neither the defendant nor his helper, Mancuso, is shown to have been in the building during

the night. They appear to have been in the habit of frequently going to Des Moines, after the close of their day's work, the defendant himself frequently putting up for the night at the Hawkeye Hotel. On the day in question, defendant was not seen in or about the factory. He explains his absence by saying that he was sick, and remained in the city, staying at the hotel until the following morning. He says he went to bed at about 7:30 P. M., and did not leave the hotel during the night, which statement has corroboration, furnished by the hotel register, and to some extent also by the testimony of the night clerk of the house. During the month previous to the fire, he had patronized a Ford livery garage, taking out a car, on several occasions, for an evening drive. On this night, before retiring to his room, he, with Mancuso, went to the livery, and procured a Ford car. According to his story, the car was taken for Mancuso's use; but, as he (Mancuso) was not acquainted at the garage, defendant went with him, and gave the order, Mancuso furnishing the money deposit required. Having procured the car, he testifies, he turned it over to Mancuso, who drove him to the hotel, where he remained for the night. In this story he is supported by Mancuso, who says that he alone used the car, and returned it to the garage about 10 o'clock. Each of them swears that he was in the city all that night, and did not return to Norwalk or to the factory until the following morning, and denies all complicity in the burning of the building. There is no direct evidence of the untruth of this defense. The State put upon the witness stand two apparently disinterested witnesses who testify that, on the evening in question, they, each driving an automobile along the highway between Norwalk and Des Moines, at a point about a quarter of a mile from the cheese factory, found their way obstructed by a Ford automobile standing across the roadway. Thinking that the driver of the standing car was in trouble, they stopped, and one of them, a physician, got out of his car, and going up to the Ford, discovered a man lying upon the back seat. This man arose, and asked what was wanted; and the doctor having explained that he thought the driver might be in trouble, the fellow answered that there was no trouble, and the witnesses left him there. Both witnesses were acquainted with Cristani; but neither recognized

him as the man in the Ford; and the doctor, who was in position to speak most positively, says he does not think it was the defendant. Had it been Cristani, it is hardly possible that Dr. Decker is mistaken upon the question of his identity. It appears in the record that the defendant is an Italian by birth, speaking our language quite brokenly, a peculiarity which would have been apparent in the reported conversation, and could hardly have deceived the witness. Again, the language of this mysterious party, as reported by the other witness, "What in hell do you want?" has all the distinctive flavor of the vocabulary of a "one hundred per cent American." Aside from this incident, and the further testimony that the Ford car seen disclosed a cross mark on the face of the tail light similar to the one on the car taken out by defendant and Mancuso, there is not a word of evidence to show that either of them was in or about Norwalk on the night the fire occurred.

II. The only other evidence relied upon to connect the defendant with the alleged crime is limited to the State's effort to prove a motive for the commission of the alleged crime by the defendant. For this purpose, testimony was admitted tending to show that defendant was laboring under considerable financial embarrassment, and that his business was not prosperous. It is further said he was over-insured.

Speaking first of the insurance, there is no such clear showing of excessive insurance as to entitle it to material weight. The policy had been taken out some two months before the fire, providing insurance upon the building, $2,000; upon furniture, fixtures, and machinery, $500; and on cheese, $500. Of the value of the building, two witnesses, neither of them builders or mechanics, estimate it at $750 to $800. They think it cost about $1,500 to build, some years before, and that to replace it at the date of the fire would cost $2,000 to $2,500. No witness attempts to say that the fixtures and machinery were worth less than $500. Nor is there any evidence that the stock of cheese on hand was less than the insured value, except the statement of a deputy fire marshal, who was active in the prosecution; and the most he can say is that, after the fire, he did not discover in the ruins any indications that cheese had been destroyed. For defendant, a carpenter and lumber dealer of

20 years' experience testified that the building, when erected, was worth $1,400, and that, at the date of the fire, lumber and labor had greatly advanced, and that to replace it would cost a great deal more. When he was asked to estimate the value of the building at that time, the court, for some reason not very apparent, excluded the answer. Defendant and Mancuso, the only persons who could speak with knowledge on the subject of the stock on hand, say that they had about 2,000 pounds ·then in the process of curing. The State's evidence on the subject of the value and extent of the property destroyed is, at the best, of very shadowy and unsubstantial character.

That the testimony of defendant's financial status,—the condition of his business and property, as well as of his insurance,—was competent upon the question of motive, is to be admitted. It may also be admitted that, if there

2. CRIMINAL LAW: were other evidence of an incriminatory char-
   motive.
acter, tending to show that the fire was of criminal origin, and tending in any fair degree to connect the defendant with the commission of the offense, such circumstances, with the alleged evidence of motive, might be sufficient to sustain a conviction; but the mere fact that a man is in financial straits, or is doing a losing business, and that by the commission of a crime he might hope to better his condition, is not, of itself, any evidence whatever that he is guilty of such crime. Motive is not a crime, nor is it an essential element of crime; hence it is well settled that evidence to show motive, unsupported by incriminatory facts and circumstances, is not sufficient to make a prima-facie case of guilt. *State v. Ruckman,* 253 Mo. 487.

And here is the fundamental weakness of the State's case. It seems to have been tried on the theory that proof of a motive, if made strong enough, would compensate for the failure to establish the *corpus delicti;* and we think it must be said that the court's charge to the jury, by its repeated references to the question of motive, and the apparent emphasis laid thereon, must have impressed the jurors (unintentionally, of course) with the idea that, if this fact were established, conviction must follow. That such is not the law, is too apparent to justify discussion. That the State's case breaks down at the threshold in its failure to prove a *corpus delicti* makes all other questions

raised of secondary importance. Such failure is quite glaringly apparent from a reading of the record. There is but one circumstance in all the evidence which, if fairly well established, could be said to necessarily indicate the guilt of the defendant. This is found in the testimony of an employee at the Ford garage, who was led to say, on direct examination, that, some time after the fire, defendant came to the garage and asked what time Mancuso returned the car which they had taken out on that night, and, on being shown the record sheet, complained because it did not show the hour when the car was brought back; and that, in the course of this conversation, defendant asked that the record of the time when the car was taken out be changed from a night hour to a day hour. This, we say, if satisfactorily shown, would justify the suspicion directed against the defendant. But not only does defendant deny the story, but the witness himself demonstrated his want of reliability by changing and modifying his story very materially in cross-examination, and says that defendant talked very brokenly and rapidly, and that it was difficult to understand him. The same witness also denied that defendant had before that time procured a car at that place of business; but, on being pressed upon that point, admitted that he was mistaken, and that the records of the garage showed some three or four recent occasions of that kind, and excused his lapse in that respect by saying that he testified at first from what he was told by the deputy fire marshal. We think the evidence as to the alleged incident entirely insufficient to take the question of defendant's guilt to the jury.

We are not unaware of the fact urged in argument for the State that arson is essentially a crime of darkness and stealth, and often difficult of proof except by circumstantial evidence; and there should be no unnecessary burden or handicap imposed upon the prosecution in cases of that kind. But on the other hand, human nature is very apt to let its imaginings and suspicions run at random, when a crime or alleged crime is shrouded in mystery or uncertainty, and to see indications of guilt in acts and words entirely consistent with innocence, and in "trifles light as air find confirmation strong as proofs of holy writ." Circumstantial evidence is not to be discarded or its value minimized, when brought to bear upon an issue of fact, within

the rules by which the law has circumscribed it.   That rule is well and clearly stated in the *Vandewater* case, supra.   See, also, *State v. Blydenburg,* 135 Iowa 264, 278.   Perhaps in no other class of criminal cases do the appellate courts find more frequent occasion to recur to first principles upon this feature of the law than in arson cases.   See *State v. McLarne,* 128 Minn. 163 (150 N. W. 787); *Heidelbaugh v. State,* 79 Neb. 499 (113 N. W. 145); *Gerke v. State,* 151 Wis. 495 (139 N. W. 404); *Bruno v. State,* 171 Wis. 490 (177 N. W. 610); *State v. McCauley,* 132 Minn. 225 (156 N. W. 280); *State v. Jacobson,* 130 Minn. 347 (153 N. W. 845); *State v. Albert,* 176 Iowa 164; *Pierce v. State,* 130 Tenn. 24; *Commonwealth v. Phillips,* 12 Ky. L. Rep. 410; *Luker v. State,* (Miss.) 14 So. 259; *State v. Rhodes,* 111 N. C. 647; *Anderson v. Commonwealth,* 83 Va. 326; *Brown v. Commonwealth,* 87 Va. 215; *Brown v. Commonwealth,* 89 Va. 379; *Shannon v. State,* 57 Ga. 482; *State v. Melick,* 65 Iowa 614; *State v. Delaney,* 92 Iowa 467.

III.   Other errors are assigned and argued by appellant, but those to which we have made reference are sufficient, we think, to make necessary a reversal of the judgment below, and we shall not further extend the opinion.

The judgment appealed from is reversed, and cause remanded, with suggestion to the trial court that, unless the State is prepared to make a materially stronger case in support of the indictment than was disclosed on the first trial, the case should be dismissed.—*Reversed.*

EVANS, C. J., PRESTON and DE GRAFF, JJ., concur.